A. B. QUINTON, *Assignee of Geo. W. Crane & Co.*, v.
T. G. CUTLIP.

*[Opinion Filed Jan. 27, 1893.]*

1.  SALE—*No Delivery—No Title Passes—Innocent Purchaser.*—July 8,
1890, the village of Kingfisher, by letter, ordered from C. & Co., the
Compiled Laws of the State of Kansas, 1889, and the Kansas Reports,
instructing C. & Co., to send the same to W., mayor of the city of
Kingfisher.   The goods were afterwards shipped to W. as such mayor
after his term had expired and he had ceased to act as such mayor;
and on his order the books were delivered to N., who, at the time,

had no connection with the city of Kingfisher. Neither the city of Kingfisher nor C. & Co., consented to the delivery of the books to N. The books remained in the possession of N. about three months when he sold them to the defendant, O., for the sum of $97.50. *Held*, that the title to said books did not pass from O. & Co. to N., and that, having no title, he could not sell them to an innocent purchaser for value, so as to pass the title to such innocent purchaser; and, *Held further*, upon the facts stated, that C. & Co. is entitled to recover.

*Appeal from the District Court of Kingfisher County, Hon. A. J. Seay, Judge.*

*W. W. Noffsenger,* for appellant.

*R. C. Palmer,* for appellee.

The opinion of the court was delivered by

BURFORD, J.: Plaintiffs Crane & Co., brought their action in the district court of Kingfisher county in replevin to recover one set of Kansas Supreme Court Reports from Vol. 1 to 42, inclusive.

Issues were joined and a trial had by jury. Verdict and judgment for the defendant.

The facts deducible from the records show that in the year 1889 the inhabitants of Kingfisher, Oklahoma, met and organized what they were pleased to designate, a city government, and elected one W. A. Wilson, mayor, W. E. Hamblin, clerk and P. S. Nagle, city attorney and other persons as a common council.

These persons proceeded to exercise the powers and duties of a municipal corporation until the 8th day of July, 1890, when a *de-jure* city government was organized pursuant to the laws of Nebraska then in force in said Territory, which *de-jure* government took actual and active control of the affairs of said city with a complete complement of officers on the 14th day of July, 1890.

The former provisional officers—Wilson, Hamblin and Nagle—were neither of them officers or agents of the *de-jure* corporation.

During the existence of the provisional government Wilson, Hamblin and Nagle had a talk in which Nagle claimed the provisional government was indebted to him for legal services and if the city would purchase for him a set of Kansas Reports he would accept the same in payment for his legal services and release the city.

Pursuant to this talk the following letter was written and sent the plaintiffs at Topeka, Kansas.

"KINGFISHER, O. T., July 8, 1890.

George W. Crane Esq., Topeka, Kansas.

DEAR SIR:

I am instructed by the mayor and council of the city of Kingfisher to order one compiled laws of the Statutes of the state, edition of 1889, and the Reports complete of said state.

Send the same by express to W. A. Wilson, mayor of the city of Kingfisher. On receipt of books registered scrip of said city will be forwarded to you, payable three months after date.

Respectfully,

W. E. HAMBLIN, City Clerk."

In answer plaintiffs wrote as follows:

"July 14, 1890.

W. E. Hamblin, Kingfisher, O. T.

DEAR SIR:

Your favor of July 8th ordering a copy of Kansas Statutes and a set of Kansas Reports received. We are temporarily out of a few volumes of the reports but will have them in a few days when we will forward you the whole lot by freight. We notice you order them shipped by express, but this would be very costly and the difference in time would not justify it."

Again on July 25, 1890, plaintiffs wrote as follows:

"W. E. Hamblin, Kingfisher, O. T.

DEAR SIR:

We have shipped the books ordered for your city and have charged the amount as our cash price but add ten per cent to cover the discount on the city warrant. If the ammount is paid in cash this amount of course is to be deducted. Please send us the warrant as soon. as you can, and oblige."

The books were packed and delivered to the Chicago Rock Island & Pacific railway company on July 23,1890, consigned to W. A. Wilson, Kingfisher, O. T., and charged on the books of Crane & Co., to the city of Kingfisher. They arrived at Kingfisher during the latter part of July or first part of August and were taken by the drayman from the railroad depot to Wilson who directed him to deliver them to Nagle.

They were left at Nagle's office and the charges paid by one Fergueson, a friend of Nagle. The books remained in possession of Nagle about three months and were sold by him to the defendant Cutlip for the sum of $97.50.

After the shipment of the books the plaintiffs continued to send monthly statements of their account to the city clerk, to which they received no response until February 18, 1891, when they received a letter enclosing a warrant for $3.50 for other goods and signed, J. L. Trout, City clerk, and on the same day they wrote Mr. Trout as follows:

"February 18, 1891.

J. L. Trout, Kingfisher, O. T.

DEAR SIR: Your esteemed favor of the 14th inst. is received with $3.50 in scrip which we have applied to the credit of the city of Kingfisher. We also have an account against the city, which we presume is filed with you and that should have been attended to before this, and we enclose herewith a duplicate bill, sworn to, being for a set of Kansas Reports and General Statutes of 1889, $164.45. It is now seven months since these goods were sent and are close cash goods and should have been settled long ago. Will you please look the matter up and ascertain for us what has been or what is intended to be done in regard to the matter.

If there is any disposition on the part of the authorities to refuse to pay the bill, we are perfectly willing to take them back and obliterate the charges and will do so on receipt of the goods. Will you kindly write us and let us know what to expect in the matter.

Truly Yours."

To which the following reply was sent:

"KINGFISHER, March 6, 1891.
GENTLEMEN:

Yours with bill for $164 received.   In reply will say there is no bill on file for the goods mentioned.   Please state who ordered the reports and statutes so we may look the matter up.

Respectfully yours,

J. L. TROUT, City Clerk."

Plaintiffs answered as follows:

"March 24, 1891.
J. L. Trout, Clerk, Kingfisher, O. T.

DEAR SIR:   Referring to ours under date of February 18, 1891, and your postal card replying under date of March 6, 1891, we have the pleasure to enclose herewith a copy of of original order covering our voucher for $164.45, which we hope will be found correct and satisfactory with you."

In response plaintiffs received the following:
"Geo. Crane & Co.

GENTLEMEN:   Your bill in the sum of $164.45 was not allowed.   Please instruct us what to do in the matter.   Think we can get the books or collect for same. Awaiting your advice I am, respectfully,

VICTOR PAYNE, City Attorney.

Per J. L. TROUT, Village Clerk."

This closed the correspondence and constitutes the entire agreement on the subject.

The plaintiffs then sent their agent to find the books; they were found in the possession of defendant Cutlip, and a demand made for their possession, which was refused.

The uncontradicted facts show that at the time the books were shipped by Crane & Co., they intended to sell them to the city of Kingfisher and so charged them on their books.   The order of the city clerk, Hamblin, stated that the mayor and common council of the city had ordered the purchase, and directed them shipped to Wilson, mayor.   This order was mailed the day that the board

of commissioners made the appointment of officers for the *de jure* government, and when the order was filled and the goods shipped, neither Wilson, Hamblin or Nagle had any official relation to or connection with the municipal corporation.

Their provisional government had ceased to exist and. their authority to act as its officers or agents had expired.

Neither of them had any authority to receive the books for the city or village of Kingfisher and their acts were not binding on the city or on the plaintiffs.

It is clear that the sale never was consummated, and there was no delivery of the books to the city of Kingfisher.

Delivery to a common carrier on the order of the consignee is generally a good delivery, and would have been sufficient in this case to have passed the title to the city of Kingfisher under ordinary circumstances, but the facts in this case show that the city never received the books from the the common carrier, and that none of her officers or authorized agents received them for her.

If no title passed to the city or village of Kingfisher, then what title passed to Nagle? Wilson did not order the books for himself. The clerk did not order the books shipped to Nagle, but to Wilson, who was the mayor of the provisional government. When they arrived at Kingfisher he did not receive them for the corporation, for his authority to act for the corporation had ceased, if he ever had any. So no sale ever actually took place for the reason that one of the essential elements was lacking, that of delivery; and nothing has ever been done to ratify or confirm the attempted sale.

Counsel for appellee cite us to the rule of law that the judgment of the trial court will not be disturbed where there is evidence to sustain the verdict, or when there

is a doubt as to the weight of the evidence, and that a
new trial will not be granted on ground that the ver-
dict is against the evidence, when the evidence is con-
flicting. We concur in these propositions, and if appli-
cable to this case, would control our conclusions.

But in this case the verdict is so clearly contrary to
the evidence that our duty is clear. When there is no
evidence to sustain a verdict upon a given point the
court should not hesitate to set aside such verdict.
There is no evidence of a delivery in this case to the
village of Kingfisher; but, on the contrary, there is con-
clusive evidence that no delivery ever took place.

It is contended for appellee that he is an innocent
purchaser for value, and hence takes a good title as
against the original vendor, and a number of authorities
are cited in support of the proposition that an innocent
purchaser from a fraudulent vendee will take a good title
as against the defrauded vendor.

There is a distinction between this class of cases and
the case at bar. While it is clear from the evidence
that a fraud was perpetrated upon the plaintiffs in this
case, and it is conceded that Cutlip is an innocent pur-
chaser for value, the case does not turn upon that ques-
tion. The case of *Moody v. Blake*, 117 Mass. 23, cited
by counsel for appellee, is clearly in point and decisive
of the case under consideration. In that case it is
said:

"It is well settled that where a vendor is induced by
fraudulent representations to deliver property to a dis-
honest or irresponsible purchaser, yet if the purchaser
transfers it for a valuable consideration to a third per-
son having no notice of the fraud, and acting in good
faith, such third person will hold the property in pref-
erence to the original seller."

And continuing the court further says:

"But the present case does not fall within this rule.
The plaintiff never sold these goods to Porter and made

no contract with him.  He supposed himself to be dealing only with Hills & Co.  He never delivered the goods to Porter and never consented to their going into his possession.  When Hills & Co. refused to receive them they remained in the hands of the carrier but were the property of, and constructively in the possession of plaintiff.  The only mode in which Porter got them into his hands was by the false pretense that he had authority from the owner to dispose of them.

"This was a wrongful conversion of them to his own use by which he could acquire no title, and for this reason it was not in his power to give any title to the defendant, although the latter may have acted in entire good faith.  The case therefore, falls within the rule laid down in *Stanley v Gaylord*, 1 Cush. 536; *Gilmore v, Newton*, 9 Alllen 171; *Bruce v. Parker*, 115 Mass. 129."

An examination of the case just quoted from will show that the facts upon which the ruling is based are very similar to the facts in the case before us.

In this case the plaintiffs never sold the books to Wilson or Nagle and made no contract with either of them individually.  They supposed they were dealing with the corporation, and that the common council of the city had authorized the purchase.

They never delivered the books to Wilson or Nagle, and never consented to them going into the possession of Nagle.  When the legally constituted village or city of Kingfisher failed to receive or accept the books, they remained the property of and constructively in the possession of Crane & Co.

The delivery to, and acceptance by Wilson and Nagle of the books, when delivered by the draymen, and taking them into their possession was a wrongful conversion by them to their own use, by which they, or neither of them, could acquire any title.  And for that reason it was not in the power of Nagle to give any title to the defendant, although Cutlip may have acted in entire good faith.

In the case of *Beahr v. Clark*, decided by the supreme court of Iowa and reported in 49th N. W. 840, it said:

"It is well settled that when goods are obtained from their owners by fraud and the facts show a sale, to the party guilty of the fraud, an innocent purchaser of the goods from the fraudulent vendee for value, and with-out notice of the fraud, will take the title. The true inquiry is did the owner intend to transfer both the property and the possession of the goods to the person guilty of the fraud. If he did, there is a contract of sale however fraudulent the device, and the property passes, and subsequent innocent purchasers for value, will be protected.

"But this rule has no application unless there is an actual sale of the property by the alleged vendor. If one delivers property to another as a mere bailee, a purchaser from the bailee acquires no title however innocent he may be. He has no more right to assert title to the property than if it had been stolen and his purchase had been from the thief.

"The principle upon which distinction rests is that the vendor in the cases last supposed, does not part with the title to the property, nor does he have any such intention, and the fraudulent possessor of property can convey no title to any third person however innocent; for no property has passed to himself from the true owner."

This principle is clearly applicable here. No property passed from Crane & Co. to the village of King-fisher, or to Nagle, and Nagle having no title, could convey none.

Under the facts appearing in the record, the provisional city of Kingfisher became and was a *de facto* municipal corporation from and after the 2d day of May 1890, and the *de facto* government was succeeded by the *de jure* corporation on the 14th day of July, 1890. These books were ordered by the acting officers of the *de facto* corporation on the representation that they were for the corporation. If the books had been shipped

to, and received by the *de facto* corporation, on the proper order of the common council, the *de jure* successor possibly might be held liable for the debt; but inasmuch as the power of the plaintiffs to deliver to the corporation when the books arrived at Kingfisher, was ·defeated by the acts of the deposed officers of the provisional government who prevented delivery to the proper officers of the city by receiving and converting the books to their own use, without the consent of either the vendor or the corporation for which they had pretendidly ordered them. They are now in no position to claim that a delivery took place, and Cutlip can take no title from one who unlawfully converts the property of another to his own use.

The district court should have granted the motion for a new trial for the reason that the verdict was contrary to the evidence.

The court gave the jury, among others, the following instructions, which were excepted to by the plaintiff:

"3. The court instructs the jury that if they believe from the evidence that the plaintiff sold, delivered and shipped the books in controversy to the city of Kingfisher, or to its acting or recognized mayor, and the defendants afterwards purchased them in good faith for a valuable consideration without any notice of fraud in the original purchase, and paid for them before he had any knowledge of Nagel's right to sell, then the law is for the defendant whether plaintiff was ever paid for the books or not.

"4. Unless you believe from the evidence that the books were delivered to, and received by the village of Kingfisher, or duly authorized agent, then the title never passed out of the plaintiffs and it had no right to appropriate the books to the payment of any debt it might have owed to Nagle and he took no title and could convey none to defendant company unless in manner stated in instruction No. 3."

These instructions properly state the law applicable to the case and are as fair to the plaintiffs as they could reasonably ask under the facts.    There was no error in giving said instructions.

The judgment of the district court of Kingfisher County is reversed at the cost of the appellee with directions to grant a new trial.

All the Justices concurring.