HUSSEY v. BLAYLOCK.

No. 729, Ind. T.    Opinion Filed May 15, 1908.

(95 Pac. 773.)

1.    **APPEAL—Review—Refusal to Direct Verdict—Presumptions.** In determining whether the court erred in refusing to instruct the jury, at the close of the evidence, to return a verdict for plaintiff, if there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. The court will not weigh or balance the evidence.

2.    **REPLEVIN—Evidence Requiring Direction of Verdict.** In an action of replevin, where the evidence discloses that plaintiff had never parted with the title to the property, but only with possession thereof, to another, it was error to refuse to instruct the jury to return a verdict for plaintiff, although the evidence disclosed defendant to be an innocent purchaser for value from such possessor.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of Indian Territory, at Atoka; Thomas C. Humphrey, Judge.*

Action in replevin by D. B. Hussey against W. W. Blaylock. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

On July 14, 1905, D. B. Hussey, plaintiff in error, plaintiff below, sued W. W. Blaylock, defendant in error, defendant below, in replevin before the United States Commissioner within and for the Atoka-Coalgate Division of the Central District of the Indian Territory, for one black horse mule, not branded, six years old and about sixteen hands high, "worth $125"; one blue mare mule, not branded, six years old, about sixteen hands high, and "worth $125"; one 3¼ Milburn wagon, "worth $25"; one log chain, "worth $2"; and one set of harness, "worth $15." Defendant for answer set up that he was an innocent purchaser for value

of the property from one J. L. Cannon. There was judgment for the defendant, and again on trial anew in the United States Court in the Indian Territory, Central District at Atoka, where the case was appealed, from which judgment plaintiff prosecuted a writ of error to the United States Court of Appeals in the Indian Territory, and the same is now before us for review.

*Forshee & Brunson* and *J. R. Ralls*, for plaintiff in error.
*P. E. Wilheim,* for defendant in error.

TURNER, J. (after stating the facts as above). The only assignment necessary for us to consider is: "The court erred in refusing to·instruct the jury in favor of the plaintiff."

We are well aware that if there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. The court will not weigh or balance the evidence. *Gulf, C. & S. F. R'y Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454.

The testimony discloses that the plaintiff for some time prior to the bringing of this suit was a timber and tie contractor engaged in furnishing such to the Missouri, Kansas & Texas Railway Company at various points on its system in the Indian Territory and Oklahoma, with a branch office at Ada, Ind. T., managed by J. V. Hussey, a brother, his agent, who, as such, had full and complete charge of all business of plaintiff in both said territories, with authority to pay out money for stock or anything needed to carry on said business. In his employ at that place was one J. L. Cannon, who was engaged in getting out and hauling ties and whose checks were honored and laborers paid by plaintiff; also, W. W. Blaylock, the defendant. Thinking it would be more economical to·buy two teams with which to do the work, one for Cannon and one for defendant, he wrote to Cannon, on January 27, 1904, as follows:

"  *  *  *  You can also buy two teams if you can buy them cheap enough and you can get haulers to haul satisfactory,  *  *  * and if you buy them I will advance you the money for them, they

to be paid for along as your account can stand it, or the teams returned to me or turned over to me in case you can't pay for them in 1904. Or at what time I desire. I am not at all afraid but that you will pay for them in time. I want this understood in case of accident. * * * "

After receiving this letter, Cannon came to the office of the writer at Ada, and urged the buying of the teams at once, and that he would drive one and defendant the other. At that time said agent informed him that he "would not sell him the team until he had sufficient money to his credit to pay for them, as I did not want to go to the trouble of taking a mortgage and recording it against the teams." It was so agreed, and that said agent would honor Cannon's check in payment for the property, which he afterward did. This was according to plaintiff's way of running his business, and property, when so purchased and disposed of, was entered upon his books as his "outfit." Pursuant to this agreement, on March 3, 1904, Cannon went to Maud, Okla., and purchased the property in controversy, giving in payment therefor a check signed by himself and J. V. Hussey, said agent, for $250, which was duly paid as agreed with money belonging to plaintiff. Defendant was present when the property was purchased and heard the seller telephone to the bank upon which it was drawn to know if it would be cashed, and on the trial of the cause identified the check given in payment therefor, which on its face stated the purpose for which it was given. Immediately thereafter, Cannon, unknown to plaintiff, sold the property to defendant for $348, with the understanding that the same was to be charged to him at that price on the books of Cannon, and paid for in hauling ties for Cannon at a stipulated price. This was done, and defendant at once placed in possession of the property, which he retained up to the time of the bringing of this suit, at which time defendant had paid Cannon in full for the property, but Cannon had never paid plaintiff therefor, or had sufficient money to his credit on plaintiff's books to pay for it.

It is apparent that these facts, which are undisputed, did not

constitute a sale of the property as between plaintiff and Cannon, for the reason that it was expressly agreed that plaintiff would not sell him the team "until he had sufficient money to his credit to pay for them," which it is admitted he never had. That being the case, Cannon had no title to convey Blaylock and could not convey that of plaintiff, without his consent, which .he did not have. It follows that Cannon was a mere possessor who undertook to sell the property of another, which can be recovered in this action against an innocent purchaser for value, which Blaylock is conceded to be.

24 Am. & Eng. Enc. of Law, 1161, says:

. "It is a well-settled general rule that a person cannot be deprived of his title to personal property without his consent, express or implied, and where no fraud or misleading acts on his part are shown; this doctrine is exemplified by the maxim *caveat emptor*, and the owner of property is entitled to recover it even from a *bona fide* purchaser who purchased the property from a mere possessor." (And authorities cited, among them, *Quinton v. Cutlip,* 1 Okla. 302, 32 Pac. 269.)

Hence, as the evidence on the part of plaintiff was sufficient to prove his cause of action, and there was no substantial evidence offered by defendant upon any material issue in the case, it was error for the trial court to refuse to instruct the jury to return a verdict in favor of the plaintiff. *Irwin v. Dole,* 7 Kan. App. 84, 52 Pac. 916; Am. & Eng. Enc. Pl. & Pr., 686, and cases cited.

For that reason this case is reversed and remanded for a new trial.

All the Justices concur.