## ROSS v. BREENE.

No. 12965—Opinion Filed Dec. 19, 1922.

(Syllabus.)

1. **Pleading—Liberal Construction on General Demurrer.**

The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, and such demurrer admits the truth of the allegations.

2. **Same — Construction in Connection with Exhibits.**

The allegations of a pleading challenged by general demurrer must be construed in connection with the exhibits attached thereto. Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681.

3. **Pleading — Petition—General Demurrer.**

A general demurrer to a petition, on the grounds that the facts stated are insufficient to constitute a cause of action, may be sustained only where the petition is so defective that the court is authorized, taking all of the facts to be admitted, in concluding no cause of action is stated entitling the plaintiff to any relief.

4. **Guardian and Ward—Notice of Appointment of Guardian for Nonresident Minor —Statutory Construction.**

Section 6570, Revised Laws 1910, providing for the appointment of a guardian for a nonresident minor who has property within the state, requires that "notice be given to all interested in such manner as the judge orders." held, that the provisions of the statute are mandatory, and that the giving of notice is jurisdictional, and that an appointment made without such notice is void.

5. **Judgment—"Collateral Attack."**

A collateral attack on a judgment or judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner other than by appeal, writ of error, certiorari, or motion for a new trial, or by a proper action in equity.

6. **Judgment—"Direct Attack."**

A direct attack upon a judgment or judicial proceeding is one authorized by law, or equity, where the primary object of the action is to vacate such judgment.

7. **Judgment — Fraudulent Procurement — Equitable Relief.**

Equity will grant relief against a judgment or judicial proceeding obtained by fraud when the fraud complained of is extrinsic or collateral to the matter adjudicated and where such fraud resulted in the entering of a false decree or judgment.

8. **Guardian and Ward—Action to Set Aside Guardian's Sale—Sufficiency of Petition.**

Record examined, and held, that the petition stated a cause of action, and that the trial court committed reversible error in sustaining the general demurrer of the defendant.

Error from District Court, Washington County: J. R. Charlton, Judge.

Action by Gunter Ross, a minor, by Maud W. Ross, his mother and next friend, against Frank M. Breene, to vacate and set aside guardian's sale and deed of lands of the plaintiff. Defendant filed general demurrer to plaintiff's petition. Judgment for the defendant sustaining the demurrer, and plaintiff appeals. Reversed and remanded, with directions.

Norman Barker, for plaintiff in error.

R. H. Hudson, for defendant in error.

KENNAMER, J. Gunter Ross, a minor, by Maud W. Ross, his mother and next friend, as plaintiff, commenced this action on the 24th day of September, 1919, in the district court of Washington county against Frank M. Breene, defendant, to vacate and set aside the probate sale of 130 acres of land located in Washington county and to cancel a guardian's deed executed on the 10th day of December, 1910, by J. A. Brown as guardian of Gunter Ross. The defendant, Breene, filed a general demurrer to the amended petition of the plaintiff, and this appeal is prosecuted to reverse the judgment of the trial court sustaining the demurrer. The amended petition is very lengthy and has attached to it as exhibits a transcript of the proceedings of the probate sale. We deem it sufficient to state briefly the material allegations of the petition for the purpose of determining its sufficiency against a general demurrer.

It was alleged that the plaintiff was a Cherokee Indian enrolled as such opposite No. 11081 as 9-32 Indian blood. That the plaintiff is now 18 years of age.

That on the 10th day of March, 1910, the plaintiff was nine years of age, and prior to that date had been a resident of Muskogee county, Okla., and living with his parents, William P. Ross and Maud W. Ross.

That on or about the 10th day of March, 1910, on account of failing health, William P. Ross moved with his family to the state of Florida to temporarily remain for a short period, but the return of the family was delayed by the sickness of the plaintiff's father.

That on or about the 10th day of March, 1910, the plaintiff had on hand money in cash of $4,439.74.

That prior to the time the family moved to Florida, the father of the plaintiff, Wil-

liam P. Ross, was discharged as legal guardian of the plaintiff by the county court of Muskogee county, and that on the 18th day of March, 1910, William P. Ross took out letters of guardianship for the plaintiff in Dade county, Fla.

That the plaintiff, in addition to the $4,439.74 in cash, had an income at said time from oil and gas mining royalties on a portion of his allotment in Washington county, Okla., not including the land involved in the action, of about $200 per month, and was otherwise being well cared for by his parents.

That on or about the 18th day of July, 1910, a stranger and person by the name of J. A. Brown, whom neither this plaintiff nor either of his parents had ever seen, filed a petition for the appointment of himself as guardian of this plaintiff in the county court of Washington county, Okla., a true copy of which petition, duly certified, is attached under mark of Exhibit "C," and made a part of the plaintiff's petition.

That said petition fraudulently stated that the parents had waived their right of guardianship in favor of J. A. Brown; and in the further fact that this plaintiff and his father were legal residents of the state of Oklahoma. That the petition was fraudulent and false in these recitals.

That on the 25th day of July, 1910, the court entered an order appointing J. A. Brown as guardian of the plaintiff. That the order was void for the reason the court was without jurisdiction in the premises.

That on the 29th day of August, 1910, J. A. Brown filed a false and fraudulent petition for the sale of that portion of the plaintiff's restricted Indian allotment in Washington county, Okla., the lands in controversy being described. That the petition for the sale of the lands alleged that the annual income therefrom was approximately nothing. That the described real estate was of the approximate value of $1,300. That the annual expense chargeable against the estate of said ward for maintenance and education was approximately $100. That it was necessary that the real estate be sold for the following reasons to wit: Because said lands were unimproved and unproductive of any income; that they were liable to taxation and that neither this guardian nor his said ward had any funds to pay the same; that they were in danger of being sold for taxes and thus work a great burden on the estate of his word; that if the petitioner was permitted to sell said lands, he could invest the proceeds in some productive stocks or other lands that could be made to yield some

revenue for the use and benefit of said ward and for the more suitable maintenance and education of said ward. That the personal property of said ward consisted of nothing within the state of Oklahoma and that the annual income therefrom was nothing.

It was alleged that the petition for the sale of this property was insufficient in form, was fraudulent, and did not disclose the true condition of the estate of the plaintiff. The petition for the sale of the property was attached to the plaintiff's petition as Exhibit "E." It was alleged the land was not unimproved and unproductive of income, but there was a comfortable four-room house on the land and the major portion thereof was susceptible of cultivation, and that the land at the time was of the value of not less than $3,000. That pursuant to the filing of the petition for the sale of the lands, an order was entered by the court fixing the date for the hearing of the petition and ordering that notice of the hearing of the petition be given by publishing a copy of the order for four consecutive weeks in the Weekly Enterprise, of Bartlesville, Okla.

That the hearing was set for September 26th, 1910, and that the publications of the order for the hearing of the petition for sale of the land were made. the first on September 2nd and the last on September 23rd, showing conclusively that the order was not complied with in publishing the same four consecutive weeks prior to the hearing. That the order did not describe the land, and that under section 6558, Revised Laws 1910, the order setting the petition for hearing and the decree of sale made on the hearing of the petition are void.

That the court in entering the decree of sale appointed three appraisers, to wit: The defendant, Frank M. Breene, M. W. Bovee, and L. E. Phillips, all of Bartlesville, Washington county.

That thereafter, on the 14th day of October, 1910, the appraisers, namely, the defendant, Frank M. Breene, M. W. Bovee, and L. E. Phillips, caused to be filed in the court, an appraisment and inventory of the estate of the plaintiff disclosing that they had appraised the 130.53 acres of land involved in controversy at the sum of $500. That the appraisment was made without the appraisers going upon the property and viewing the premises, and that such appraisment was fraudulent and void, in that it grossly understated the value of the land.

That thereafter, on the 25th day of November, 1910, J. A. Brown filed his return of the pretended sale of the real estate. but

that such proceedings were void and fraudulent against the plaintiff for the reason that J. A. Brown, regardless of his former statement that the property was worth $1,300, in his petition to sell the land, which statement was sufficient to put persons on inquiry as to the true nature of his transactions in regard to the sale, and with his fraud and misconduct the said J. A. Brown accepted $500 in full for all of the valuable property of this plaintiff.

That thereafter, on the 5th day of December, 1910, Frank M. Breene, who was one of the appraisers of the property and who placed such valuation thereon of $500, filed a bid on the land of $562.50, and on that date an order of confirmation was made confirming the sale to Frank M. Breene for said sum of $562.50.

That thereafter J. A. Brown, in pursuance of such order, made, executed, and delivered to Frank M. Breene his pretended guardian's deed to said real estate (copies of the deed and order of the confirmation being attached as exhibits). That the deed was void, fraudulent, and without authority, and the order authorizing the deed was void, fraudulent, and wholly without the jurisdiction of the court; that the whole proceedings pertaining to the sale of the plaintiff's land were fraudulent and a nullity against this plaintiff, and the land was bought by Frank M. Breene with full knowledge of the fraudulent conduct and designs of J. A. Brown, which was plainly shown by his acts in the premises as the pretended guardian of this plaintiff.

The plaintiff tendered back the $562.50 purchase money, if required by the court, prayed for a cancellation of the guardian's deed, and that the sale be declared fraudulent and void, and for general equitable relief.

The defendant filed a general demurrer to the plaintiff's amended petition, which was by the court on the 31st day of August, 1921, sustained. This appeal involves but one question: Did the trial court commit error in sustaining the demurrer? We cannot agree with counsel for the defendant in error that this action is collateral attack upon the sale proceedings or the judgment of the county court authorizing and confirming the sale. In the absence of the allegations of fraud in procuring the appointment of the guardian and the consummation of the sale, the contention of counsel for the defendant in error would be sound. The allegations of a petition challenged by a general demurrer must be construed liberally in favor of the pleader, and such demurrer admits the truth of the allegations. Ruby v. Warrier, 71 Oklahoma, 175 Pac. 355: Oklahoma Sash & Door Co. v. American Bonding Co., 67 Okla. 244, 170 Pac. 511.

In construing the allegations of a petition challenged by a general demurrer, the same must be construed in connection with the exhibits attached thereto. Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681.

A general demurrer to a petition on the ground that the facts stated are insufficient to constitute a cause of action may be sustained only where the petition is so defective that the court is authorized, taking all of the facts to be admitted, in concluding no cause of action is stated entitling the plaintiff to any relief. Oklahoma Sash & Door Co. v. American Bonding Co., supra.

If any paragraph of the petition states a cause of action, the demurrer should be overruled. Blackwell Oil & Gas Co. v. Whitesides, 71 Oklahoma, 174 Pac. 573; Jackson v. Levy, 75 Okla. 256, 183 Pac. 505; Tucker v. Leonard, 76 Okla. 17, 183 Pac. 907. Bearing in mind these well established rules, we will consider the petition in question. The allegations of the petition are to the effect that J. A. Brown, a stranger to the plaintiff and his family, procured himself to be appointed guardian of the plaintiff, representing to the court that he had a written waiver from the plaintiff's parents consenting to his appointment, when, in truth and in fact, he had no such waiver. Section 6570, Revised Laws 1910, reads:

"When a person liable to be put under guardianship, according to the provisions of this chapter, resides without this state, and has estate therein, any friend of such person, or any one interested in his estate, in expectancy or otherwise, may apply to the county judge of any county in which there is any estate of such absent person, for the appointment of a guardian; and if, after notice given to all interested, in such manner as the judge orders, and a full hearing and examination, it appears proper, a guardian for such absent persons may be appointed."

It is clear that this statute only authorizes the appointment of a guardian for a nonresident upon the application of a friend of such minor interested in the preservation of his estate located within the state, and that reasonable notice must be given to all interested persons in the manner provided in the statute by the appointing judge. Unquestionably the statute does not authorize the court to appoint a person applying in a fraudulent manner, and if the allegations of the petition of the plaintiff are true, J. A. Brown obtained his appointment by perpetrating a fraud upon the minor and the court.

It may be, as contended by counsel for the defendant, that the allegations of the petition are untrue with regard to the manner in which Brown procured his appointment as guardian, but in determining the correctness of the court's ruling on the demurrer it is our duty to treat the allegations as being true. It is evident from the allegations of the petition that the waivers of the parents of the plaintiff were intended to operate as notice to the persons interested in the estate of the plaintiff in making the appointment, and if the waivers are a fraud, and in fact a forgery, then the appointment was made without the notice required by the statute. In this situation, the appointment of Brown as guardian was a fraud upon the plaintiff and the court making the appointment. It necesarily follows, an appointment procured in such manner should be declared to be fraudulent. If the defendant in this action had knowledge of the fraud, as alleged in the petition, he cannot be protected as an innocent purchaser.

The order appointing J. A. Brown guardian of the plaintiff entered on the 25th day of July, 1910, reads:

"Upon reading and filing the petition of J. A. Brown, a resident of Muskogee county, state of Oklahoma, asking for the appointment of J. A. Brown of said county as guardian of the estate of Gunter Ross, a minor child of Willaim P. Ross, Miami, Florida.

"It is ordered, adjudged, and decreed by the court, that the said J. A. Brown be appointed guardian of the estate of Gunter Ross, a minor, until he shall become of full age, or until another guardian shall be appointed, upon his filing the oath of office as such guardian, and executing a bond to said * * * minor, in the penal sum of one thousand dollars with sureties to be approved by the judge of this court, and that letters of guardianship be issued accordingly.

"A. T. Dumenil,

"Judge of the County Court."

It will be observed that the order nowhere recites that any notice was given, but that the order was made upon reading and filing the petition. It is true that the county courts in this state, in the exercise of probate jurisdiction, are courts of general jurisdiction, and the presumptions are that the orders of such courts in probate matters are valid, and that all of the jurisdictional facts were found to exist in the making of such orders. But the rule is well established that, as a prerequisiste to the validity of an appointment of a guardian, the jurisdictional facts must exist, such as the minority of the ward, his domicile, residence, or ownership of property within the jurisdiction of the court.

Notice of the hearing on the application for the appointment as required by statute must be given, and failure to give such notice is fatal to the jurisdiction of the court to make a valid appointment. McIntosh v. Holtgrave et al., 79 Okla. 63, 191 Pac. 739. This is true although the statute only provides such notice to be given as the judge shall direct. Devereaux v. James, 171 Mich. 265, 104 N. W. 579, 113 A. S. R. 523; Davis v. Hudson et ux., 29 Minn. 27.

The Supreme Court of Minnesota in Devereaux v. Hudson et ux., supra, in construing a statute providing for the appointment of a guardian for a nonresident minor and requiring such notice to all interested persons as the judge shall order, held, that the notice is jurisdictional and that it is only upon notice that the judge of probate is authorized to appoint such guardian. We conclude that the provisions of section 6570, Revised Laws 1910, supra, are mandatory, and that in order to vest the court with jurisdiction to make a valid appointment of a guardian for a nonresident minor, it is necessary that the notice be given as required by the statute.

If the appointment was made in the instant case, as alleged in the petition, upon a purported waiver of the parents of the plaintiff, and such waiver in fact was not given, or did not exist, and the court made no order requiring any notice of any kind to interested parties, it is clear the appointment of Brown, as guardian of the plaintiff, is void.

The next question presented on the sufficiency of the petition of the plaintiff as against the general demurrer is whether the allegations of the petition to set aside and vacate the sale are sufficient as against a general demurrer. The defendant in error contends that the action is a collateral attack upon the guardian's sale made by Brown to Breene, the defendant in this action. We are unable to agree with counsel for the defendant in this contention. According to the allegations of the petition, the plaintiff seeks to have the sale vacated for fraud practiced by the guardian in making the sale, and charges Breene, the purchaser at the sale, as being a party to the fraud and with knowledge of all the fraud committed by Brown in making the sale under orders of the probate court. The distinction between a collateral attack and direct attack upon a judgment of a domestic court, in view of the innumerable conflicting authorities, presents a question not free from difficulty. Ordinarily, a "collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it or to deny its force and effect in some manner other than by appeal, writ of error, certior-

ari, or motion for a new trial." Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681.

The manner of vacating a judgment in one of the prescribed manners fixed by the statute constitutes the ordinary legal remedies afforded by law. There is, however, another remedy available for the vacation of a judicial proceeding other than in accordance with one of the statutory modes that have been provided by law. Courts of general equitable jurisdiction have power, in a direct proceeding instituted for the primary purpose of vacating a judicial proceeding for extraneous fraud, to set aside a judgment or judicial proceeding. The grounds and mode for vacating a judicial proceeding provided by the statutes are not exclusive. Earl v. Earl, 91 Ind. 27.

Equity is now established law and operates under well established rules, and will vary in granting relief according to the facts and circumstances of the particular case to be determined. A fundamental principle of equity is that it affords a remedy for the redress of a wrong, or a fraud, by reason of the absence of a legal remedy or the inadequacy of such remedy. Usually, a collateral attack on a judgment or judicial proceeding is an attempt to avoid its binding force in a proceeding not instituted for the purpose of vacating such judgment or proceeding as provided by law or in equity. Brown v. Trent et al., 36 Okla. 239, 128 Pac. 895; McIntosh v. Holtgrave et al., 79 Okla. 63, 191 Pac. 739; Griffin v. Culp, 68 Okla. 310, 174 Pac. 495.

In the case of McIntosh v. Holtgrave et al., supra, Mr. Justice McNeill, in delivering the opinion of this court, said:

"A domestic judgment may be attacked in three ways:

"(a) By direct attack, which is an attempt to avoid or correct it in some manner provided by law.

"(b) A collateral attack, which is an attempt to avoid, defeat, or evade it, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it.

"(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

It was held in McIntosh v. Holtgrave, supra, that an action in equity to vacate a judgment for fraud, while strictly speaking it is neither a collateral nor direct attack, such an action is more in the nature of a direct attack, and therefore the court classified it as an equitable proceeding. Hence, it is clear that the technical classification of such an action is not material, but the essential fact is that this court, in harmony with the great weight of authoriy, recognizes the right of an interested party affected by the extraneous fraud of a party in securing a judgment, to have the judgment vacated in an action in equity.

It is clear that a direct attack upon a judgment or judicial proceeding is one authorized by the law or equity where the primary object of the action or proceeding is to vacate such judgment. Brown et al. v. Trent et al., supra; U. S. v. Thockmorton et al., 98 U. S. 61, 25 L. Ed. 93. It is well established by the authorities that a court of equity will afford relief against a judgment where there are frauds extrinsic or collateral to the matter tried by the first court in an adversary proceeding. It is clear there is more reason for permitting such an action to vacate a fraudulent guardian's sale in view of the fact that a proceeding by a guardian for the sale of the lands belonging to his ward is held not to be an adversary proceeding. Such proceeding is conducted by the guardian in the interest of the ward. Moffer v. Jones, 67 Okla. 171, 169 Pac. 652; Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433; Dewalt v. Cline et al., 35 Okla. 197, 128 Pac. 121.

Section 6544, Revised Laws 1910, makes it the mandatory duty of every guardian to manage the estate of his ward frugally and without waste, and a guardian procuring an order of a probate court through fraud by falsely representing to the court material statements with respect to the estate of his ward, has committed such a fraud against the ward and upon the court as will warrant a court of equity in vacating such an order. A guardian's deed executed pursuant to a fraudulent order will be canceled where the purchaser had notice of the fraud or participated in it.

The Supreme Court of Montana, in the case of Clark v. Clark, 210 Pac. 93, in discussing extrinsic or collateral fraud, said:

"What, then, is meant by the expression 'fraud which is extrinsic or collateral to the matter tried by the court'? It is extrinsic or collateral within the meaning of the rule, when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully, as, for instance, keeping him away from court by false promise or compromise, or purposely keeping him in ignorance of the pendency of the action, or where an attorney fraudulently pretends

to prepresent a party and connives at his defeat, or, being regularly employed, sells out his client's interest (15 R. C. L. 763), or where a party residing without the jurisdiction of the court is induced by false pretenses or representations to come within the jurisdiction for the sole purpose of getting personal service of process upon him, or where, through the instrumentality of the successful party, the witnesses of his adversary are forcibly or illegally detained from court or bribed to disobey the subpoena served upon them, or where a judgment is obtained in violation of an agreement between the parties. 1 Bigelow on Frauds, c. 6, sec. 2."

This statement of the court in regard as to what is meant by the expression "fraud which is extrinsic or collateral to the matter tried by the court" is in effect the same as found in the case of United States v. Thockmorton, supra. It is quite obivious that if a court of equity will relieve against a judgment for the fraud of an attorney in selling out the interest of his client, a minor is entitled to relief against the fraudulent acts of his guardian, who occupies a relation of trust towards such minor, in conducting a guardianship sale. The purchaser at such sale must have had knowledge of the fraud, or participated in it, in order to affect his title.

The petition filed by the plaintiff in the instant case charges the guardian with having made specific fraudulent and false statements to the court in regard to the condition of the plaintiff's estate, and that such statements were a fraud upon the plaintiff and the court making the order of sale. That the defendant, the purchaser at the sale, was appointed one of the appraisers of the land to be sold, and that he caused a fraudulent and false appraisal of the land to be made that he might purchase said lands at a grossly inadequate consideration. We are clearly of the opinion that the allegations of the petition stated a cause of action, and that the trial court committed reversible error in sustaining the demurrer. We do not know what the evidence may show in the trial of the case. It must be borne in mind that before equity will relieve against a judicial proceeding for fraud, the fraud must be established by clear and convincing evidence. But in determining the sufficiency of the petition as against a general demurrer, we treat the allegations of the petition as being true. We conclude that the demurrer should have been overruled.

The judgment of the trial court is reversed, and the cause remanded, with directions to proceed in accordance with the views herein expressed.

HARRISON, C. J., and KANE, JOHNSON, MILLER, NICHOLSON, and COCHRAN, JJ., concur.