**CLINTON et al. v. MILLER et al.**

No. 11791—Opinion Filed May 29, 1923.

Rehearing Denied June 19, 1923.

Leave to File Second Rehearing Denied Oct. 2, 1923.

(Syllabus.)

1. **New Trial—Ground of Newly Discovered Evidence—Time for Petition.**

The granting of a new trial on the ground of newly discovered evidence is a statutory proceeding and must be filed within the time provided by section 576, Comp. Stat. 1921, to. wit, within one year after the final judgment was rendered.

2. **Judgment—Vacation for Fraud—Perjured Testimony.**

· A court of equity will not set aside a judgment on the ground that judgment was procured by false testimony of the prevailing party on material questions which were at issue in said cause and were tried and determined by the trial court, except where the false and perjured testimony concerns some extraneous fraud practiced by the prevailing party.

3. **Same—Petition for New Trial—Insufficiency.**

Petition examined, and held not to contain sufficient allegations of fraud to entitle plaintiffs to equitable relief.

Error from District Court, Creek County; Mark Bozarth, Judge.

Petition by Fred S. Clinton and another for new trial on ground of newly discovered evidence. Demurrer to petition by Ambrose Miller and another sustained, and petitioners bring error. Affirmed.

West, Sherman, Davidson & Moore and Phil W. Davis, Jr., for plaintiffs in error.

C. N. Simon, Valjean Biddison, and W. H. Kornegay, for defendants in error.

COCHRAN, J. On November 10, 1914, Ambrose Miller owned certain land in Creek county and a portion of the oil and gas royalty reserved to the owner. On that date he conveyed a one-fourth interest in the fee and royalty to Fred S. Clinton. On December 14, 1915, Miller and his wife filed a suit in the district court of Creek county to cancel the conveyance to Clinton, and a decree was entered in said cause canceling such conveyance, and upon appeal to the Supreme Court of the state the decree of the lower court was affirmed, the opinion being reported in the case of Clinton v. Miller, 77 Okla. 173, 186 Pac. 932. The mandate of the Supreme Court was filed in the district court of Creek county on January 28, 1920.

On February 6, 1920, Fred S. Clinton filed his petition in the district court of Creek county, seeking to set aside and vacate the aforesaid judgment and praying for a new trial. The petition recited the first litigation between the parties and the judgment rendered therein, and also set out the material issues raised by the pleadings in the first litigation, the findings of the trial court upon which the decree was based, and the opinion of the Supreme Court affirming the same. The petition then alleges in substance: (1) That the evidence upon which the trial court based its judgment was to the effect that Fred S. Clinton had as a physician treated the defendant Miller for pneumonia and had given him professional treatment at another time in the city of Tulsa; that as a matter of fact Dr. Bland was the family and personal physician of the said Miller, and was such physician at the time the said contracts and deeds were executed, and that the said Miller procured the judgment sought to be set aside by falsely swearing and fraudulently pretending and inducing the court to believe that the said Clinton had been his personal and family physician and was such at the time of the transaction sought in the first suit to be set aside. and in withholding from the court the material

facts with reference to this matter, to wit, that Dr. Bland was at the time of the transaction the personal and family physician of said Miller; (2) that the said Miller procured said judgment by falsely and fraudulently swearing, pretending, and inducing the court to believe that the said Miller had full faith, trust, and confidence in Fred S. Clinton, when in fact he had and entertained a personal dislike toward the latter; that there was not, as the said Miller well knew, any confidential relation existing between them, and, in fact, as the plaintiffs have recently been informed, the said Miller had a personal dislike and entertained an animosity of mind toward Fred S. Clinton, which state of mind would have precluded the latter from using any undue influence over the said Miller, and that these facts were unknown to the plaintiffs at the time of the trial of the first cause and have come to their knowledge since that time; (3) that the judgment was procured by fraud of Miller in falsely swearing that he was so intoxicated at the time of the transaction sought to be set aside that he did not know what he was doing; that he was mentally incompetent by reason of his intoxication at the time of the execution of said contracts and deeds; that this testimony was false and fraudulent, as he well knew; that his testimony upon that subject is conclusively shown to be false by certain letters written by Miller shortly after the transaction which was attacked in the first suit, which letters Miller at the first trial failed to disclose and the existence of which he concealed; that these letters contained statements and admissions which confirm the claims of Clinton to the property in controversy in the first suit; that these letters were not available for the reason plaintiffs in the trial of the first suit had no knowledge of them at that time nor until after the judgment in said cause had been rendered, and that these letters came to the knowledge of the plaintiffs by reason of the fact that in subsequent suits brought by Miller against O. R. Howard and J. D. Kimmel to set aside conveyances to them of interests in Miller's property which were made on the same date that the conveyance was made to the said Fred S. Clinton, which suits were filed after the judgment against Clinton had been rendered, these letters were discovered and used as evidence in the trials, both of said suits being decided adversely to Miller.

The defendants filed a demurrer to the petition, which was by the court sustained, and the plaintiffs have appealed to this court.

It is first insisted by the plaintiffs that there was error in sustaining a demurrer because the petition showed such newly discovered evidence as in equity entitled plaintiffs therein to a new trial, and they cite the case of Roeser v. Pease, 37 Okla. 222, 131 Pac. 534. The case cited has no application to the instant case, because in that case the motion for a new trial on the ground of newly discovered evidence was filed within the statutory period, whereas in the case at bar the motion was filed more than one year after the judgment was rendered. The granting of a new trial on the ground of newly discovered evidence is based entirely upon the statute, and must be filed within the time provided by section 576, Comp. Stats. 1921, which provides:

"No such petition shall be filed more than one year after the final judgment was rendered."

It is next contended that the petition stated facts sufficient to entitle the plaintiffs to the relief in equity because of the alleged fraud perpetrated in procuring the judgment. It is urged that the alleged false testimony was that of the prevailing party and prevented the said Clinton from having a real trial upon the aforesaid issues and, therefore, is sufficient to entitle the plaintiffs to relief in equity. The plaintiffs rely upon the case of El Reno Mutual Fire Ins. Co. v. Sutton, 41 Okla. 297, 137 Pac. 700, in which the following statement is made in the third paragraph of the syllabus:

"Where the unsuccessful party has been prevented from exhibiting fully his case by fraud and perjury practiced on him by his opponent, and it is clear that by reason of such fraud and perjury there has never been a real contest in the trial or hearing of the case, a court of equity may set aside the judgment thus rendered and grant a new trial."

In that case, suit was brought to recover on a fire insurance policy, and judgment was rendered against the insurance company, and thereafter it was discovered by the insurance company that the goods which were alleged to have been burned, and which were covered by the insurance policy, had never been burned at all, but had been removed by the plaintiff in the case, from this state to New Mexico. It also appears that no issue was made on the question of the loss of the goods by fire in the trial of the original case, as all of the facts had led the insurance company to believe that the loss had been sustained, and the issue tried was as to the amount of the recovery. That case presents an entirely different state of facts

from the case at bar, because the fraud of the plaintiff in removing from the state the goods which were covered by the fire insurance policy and in preparing the physical evidence of a loss by fire were matters extrinsic of the issues in the case and prevented the insurance company from having a real contest on the merits of the case; in other words, the false testimony was as to an extraneous fraud practiced by the prevailing party which prevented the other from having a trial of the issue.

The case of Richardson v. Howard, 51 Okla. 240, 151 Pac. 887, is also relied on by the plaintiffs, but has no bearing upon this case except in that it holds that in proper proceedings relief may be had in equity against judgments procured by fraud within two years from the time the fraud is discovered and the party is not limited to bringing the action within two years from the date of judgment.

It is not necessary to determine whether this action has been commenced within the proper time to enable the plaintiffs to have relief in equity if the action were based upon such fraud as would entitle the plaintiffs to relief in equity, because it is our opinion that the petition in the instant case alleges nothing more than that the judgment in the original action was procured by false testimony of the prevailing party on material questions which were at issue in said cause and were tried and determined by the trial court and by the appellate court upon a review of the entire evidence shown in the record.

In the case of El Reno Mutual Fire Ins. Co. v. Sutton, supra, the court said:

"As one of the general rules governing the subject, however, it may be safely said that no relief should be granted where the matter upon which the claim to relief is founded was litigated in the original action, or where the matter might have been litigated at the former trial by the exercise of due diligence, or where it could have been obtained upon motion in the court which rendered the judgment, unless it appears that the relief sought is in aid of a meritorious claim or defense."

In Clark v. Clark (Mont.) 210 Pac. 93, the court said:

"The power of a court of equity to grant relief from a judgment obtained by fraud is inherent, and the rule relates to decrees in equity as well as to judgments at law (15 R. C. L. 760, 761); but not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have

reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered."

After citing numerous authorities, the court proceeded as follows:

"What, then, is meant by the expression 'fraud which is extrinsic or collateral to the matter tried by the court?' It is extrinsic or collateral within the meaning of the rule when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully, as, for instance, keeping him away from court by false promise of compromise, or purposely keeping him in ignorance of the pendency of the action, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, sells out his client's interest (15 R. C. L. 763), or where a party residing without the jurisdiction of the court is induced by false pretenses or representations to come within the jurisdiction for the sole purpose of getting personal service of process upon him, or where, through the instrumentality of the successful party, the witnesses of his adversary are forcibly or illegally detained from court or bribed to disobey the subpoena served upon them, or where a judgment is obtained in violation of an agreement between the parties. 1 Bigelow on Frauds, c. 6, sec. 2."

The opinion in the above case was cited with approval and followed by this court in the case of Ross v. Breene, 88 Okla. 37, 211 Pac. 417, in which the court used the following language:

"It is well established by the authorities that a court of equity will afford relief against a judgment where there are frauds extrinsic or collateral to the matter tried by the first court in an adversary proceeding."

To the same effect is Southwestern Surety Ins. Co. v. Holt, 88 Okla. 281, 213 Pac. 80.

In Estes v. Timmons, 12 Okla. 537, 73 Pac. 303, the court said:

"The only allegation of fraud in this petition is the statement that the witnesses named, testifying on behalf of defendant, Timmons, testified falsely—in short, committed perjury—and the further allegation that the plaintiff was then unable to disprove their statement."

—and the rule was announced in the second paragraph of the syllabus as follows:

"As a general rule, the frauds for which a bill in chancery will be sustained to set aside a judgment or decree between the same parties rendered by a court of competent jurisdiction, or special tribunal, are

frauds extrinsic or collateral to the matter tried by the first court, and not a fraud which was in issue in the former suit (following 98 U. S. 61.) And when a plaintiff fails to plead such a state of facts as will enable a court of equity to grant relief, a demurrer directed to such pleading should be sustained, for even a petition in equity must not only show that a wrong has been done the party for which he has no adequate remedy at law, but it must appear from the statements in the petition that a court of equity can, if the allegations are established, correct the mistakes or fraud."

In Baldwin v. Stark, 107 U. S. 463, the law in this class of cases is very clearly stated, as follows:

"Where fraud or imposition has been practiced on the party interested, or on the officers of the law, or where these latter have clearly mistaken the law of the case as applicable to the facts, courts of equity may give relief; but they are not authorized to re-examine into a mere question of fact dependent on conflicting evidence, and to review the weight which those officers attached to such evidence."

In Gray v. McKnight, 75 Okla. 268, 183 Pac. 489, this court said:

"A judgment may be assailed for fraud extraneous to the issues practiced on the court, or on the party against whom the judgment was rendered, which prevented him from having a fair opportunity to present his case, and it is immaterial, when a judgment is attached on this ground, whether it is denominated direct or collateral. Griffin v. Culp, 68 Okla. 310, 174 Pac. 495. But the alleged fraud relied on to set aside the judgment of the county court is that the testimony upon which the decree of distribution was based was false, and such a claim cannot prevail in this action, for it is well settled that a judgment cannot be set aside in an independent proceeding, where the fraud alleged inheres in the verdict. Brown et al. v. Trent et al., 36 Okla. 239, 128 Pac. 895; Driskill v. Quinn et al., 69 Okla. 77, 170 Pac. 495."

In Thigpen v. Deutsch et al., 66 Okla. 19, 166 Pac. 901, the allegation of the petition was that the plaintiff procured a witness to swear falsely in regard to the age of the allottee, that the plaintiff procured the witness to swear falsely by promising to pay the witness money if he would so testify, and in holding that the petition was not sufficient to vacate the judgment on the ground of fraud, this court used the following language:

"The question for consideration here is whether or not the showing of plaintiff was sufficient to vacate and annul the judgment attacked. The first question presented for determination is a question of law, and is

whether or not false and perjured testimony alone, unaccompanied by any other circumstances of fraud, is sufficient ground for a court to vacate and annul a judgment. It is well settled by the authorities, almost universally, that when the false or perjured testimony complained of was given at the trial on an issue that was tried out by the court that rendered the judgment attacked, and is not false and perjured testimony concerning some extraneous fraud practiced by the prevailing party, which prevented the other from having a trial of the issue, such false and perjured testimony is not sufficient alone to warrant a court to interfere and set aside or annul a judgment rendered on such false and perjured testimony."

We are, therefore, of the opinion that the allegations of perjury on the part of the prevailing party were not sufficient allegations of fraud to entitle the plaintiff to equitable relief against the judgment in the original action.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, and MASON, JJ., concur.