**OKLAHOMA STOCKYARDS NAT. BANK
v. PIERCE.**

No. 14540—Opinion Filed Nov. 24, 1925.

Rehearing Denied Jan. 19, 1926.

(Syllabus.)

1. **Trial—Directed Verdict—When Properly Refused.**

It is not reversible error to refuse an instructed verdict for the defendant where there is competent evidence which reasonably supports the verdict of the jury in favor of the plaintiff.

2. **Judgment—Lack of Process — Impeachment by Extrinsic Evidence.**

A judgment procured without service of process is fraudulent and may be impeached by extrinsic evidence.

3. **Same—Attack for Fraud—Name of Remedy Immaterial.**

The name of the remedy by which a fraudulent judgment is attacked is not material, whether it be direct or collateral, whether by bill in equity or by petition under section 812 of the statute. It is the fraud of the judgment that challenges the court's attention and invokes its power, and the results must be the same regardless of the name the remedy employed may bear.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Emma Pierce against the Oklahoma Stockyards National Bank. From a judgment for the plaintiff, the defendant presents error. Affirmed.

Wilson, Tomerlin, & Threlkeld, for plaintiff in error.

Chastain, Harris & Young, for defendant in error.

MASON, J. This action was brought by defendant in error against plaintiff in error to recover a judgment for a certain sum of money which she claimed to have on deposit in said bank. The bank de.ended on the ground that the deposit had been taken by virtue of a certain garnishment proceeding had before W. P. Hawkins, justice of the peace, wherein said bank had been held liable as garnishee, and had paid the money into court, and had charged the same to defendant in error's account.

The defendant in error filed a reply, denying the allegations of the answer generally and averring that she had never been served with summons, and had no knowledge of said action.

It appears that on the 25th of August, 1912, George A. Matlock recovered a judgment against defendant in error for the sum of $125 and costs, before Julius J. Beall, a justice of the peace; that a number of executions and garnishment writs were issued and returned unsatisfied; that on the 25th day of July, 1921, a garnishment summons was issued to plaintiff in error returnable on the 4th day of August, 1921, and on that date plaintiff in error answered and admitted indebtedness to defendant in error in the sum of $458.84, and was ordered by the justice to pay the same into court, which it did. The justice found that there was due on the judgment of August 25, 1912, the sum of $208.50, and paid the same out accordingly.

This case, which was brought to recover this amount from the said bank, was tried in the district court of Oklahoma county on the 15th day of December, 1922, and at the conclusion of the evidence plaintiff in error moved the court to instruct the jury to return a verdict in its favor, which was overruled and exceptions allowed. By consent of the parties the court submitted two in-

terrogatories to the jury which, with the answers thereto, are as follows:

"Interrogatory No. 1. Was the summons which was issued by J. J. Beall, a justice of of the peace, on September 12, 1912, in an action that day brought before said justice of the peace by George A. Matlock against Mrs. Emma Pierce served on the plaintiff in this action, Mrs. Emma Pierce, by either delivered to or leaving a copy thereof duly certified with the plaintiff in this action?"

"Answer: No. (Signed) C. N. Engart."

"Interrogatory No. 2. Did the plaintiff in this action, Mrs. Emma Pierce, have any knowledge or information prior to the date of the commencement of the garnishment proceedings in the case of George A. Matlock against Mrs. Emma Pierce that an action had ever been commenced against her by George A. Matlock or that a judgment had ever been rendered against her in favor of said George A. Matlock?"

"Answer: No. (Signed) C. N. Engart."

Plaintiff in error filed a motion for judgment non obstante veredicto, which was overruled, and judgment was entered on the special finding of the jury.

The jury having found in favor of defendant in error, plaintiff in error admits that:

"Everything is out of this case except the legal proposition of whether or not the defendant will be permitted to attack the return of the constable showing service to have been duly made on her by her oral evidence in this collateral proceeding."

If the return of this officer may be attacked at all, it may be done by the oral testimony of the defendant in error, and if not, the return must be held immune from attack. This court, however, in Ray v Harrison, 32 Okla. 17, 121 Pac. 633, held:

"When an officer makes a false return of personal service on which judgment is rendered, when in fact there has been no service at all, such return is not conclusive evidence against the fact."

In the body of the opinion the court uses this language:

"While such a return is prima facie evidence of its truthfulness, and while it requires clear and convincing proof to set it aside, it is the duty of the court, when evidence meets this test, to act upon it, and not permit an established falsehood to stand as true."

For reversal it is first contended that the trial court erred in refusing to direct a verdict for the bank and against the plaintiff. There is no merit in this contention.

In Hussey v. Blaylock, 21 Okla. 220, 95 Pac. 773, this court held:

"In determining whether the court erred in refusing to instruct the jury, at the close of the evidence, to return a verdict for plaintiff, if there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. The court will not weigh or balance the evidence."

There is competent evidence in the record tending to support the verdict of the jury. It is competent for defendant in error to say whether she was served with process in Matlock's suit against her, and the weight or sufficiency of this evidence is not for us to determine, but belongs solely to the province of the jury.

A judgment procured without the service of process is a fraud, not only on the party against whom the judgment is rendered, but on the court as well, and is always, as between the parties thereto, subject to attack, either collateral or direct, regardless of the name the remedy employed may bear.

If judgments may be rendered without the adversary's day in court, and by some fiction of the law made immune from attack, the Constitution provides no security against the taking of property without due process of law and every citizen is exposed to the machinations of persons with evil designs and purposes against him and his property.

In Gray v. McKnight, 75 Okla. 268, 183 Pac. 489, this court held:

"A judgment may be assailed for fraud extraneous to the issues practiced on the court, or on the party against whom the judgment was rendered, which prevented him from having a fair opportunity to present his case, and it is immaterial, when a judgment is attacked on this ground, whether it is denominated direct or collateral."

This case cites with approval Griffin v. Culp, 68 Okla. 310, 174 Pac. 495, and both of the above cases are cited and approved in Clinton v. Miller, 96 Okla. 71, 216 Pac. 135, and in Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453.

In Brown v. Trent, 36 Okla. 239, 128 Pac. 895, this court held that an attack on a judgment procured by fraud is a direct attack. In McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, Mr. Justice McNeill, speaking for the court, after declaring that Mr. Justice Rainey in Griffin v. Culp, supra, had blazed the way to clarify the opinions not only of this court but the courts of the different states, stated as follows:

"The confusion in the opinions has arisen by the courts attempting to determine whether an equity proceeding is a direct attack or a collateral attack, and upon this they disagree, and this is the basis for the confusion in the opinions in many cases, and upon which the courts disagree. One court, under a state of facts, will hold that an equity proceeding for fraud extrinsic to the issues is a direct attack, and set aside the judgment; another court will hold it is a collateral attack, under the same pleading and evidence, and hold the recitals in the judgment conclusive. In my judgment it is, strictly speaking, neither, but it is more in the nature of a direct attack. In my judgment, if the court would classify the different proceedings by which a judgment might be attacked under three classifications, to wit: First, direct attack; second, collateral attack; and third, proceeding in equity because of fraud extrinsic to the issues which prevented the complaining party from having a fair hearing—this would avoid much of the confusion. If such a classification were made, the opinions hereafter would not be so conflicting nor so confusing, either to the members of the bar or the trial court in attempting to apply the correct rule. There is no case which does not come within one of these classes."

We are constrained to say the name of the procedure by which a judgment is attacked for fraud is not material. It may be attacked by bill in equity. It may be attacked by petition under section 812, C. O. S. 1921, or it may be attacked in any proceeding where such judgment is relied on as the basis of an action or as a defense, and to sustain the attack evidence dehors the record is competent.

If there had been a solemn adjudication of service of summons, defendant in error would not have been precluded thereby, and extrinsic evidence would have been competent to refute and contradict such an adjudication.

In Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, Mr. Justice Ramsey, in a very learned and elaborate discussion, said:

"Fortified with the safeguards hereinafter defined, we believe the ends of public policy will be fully satisfied and the ends of justice met by admitting extrinsic evidence to contradict the officer's return of service and the recital in a judgment of service, when the facts and circumstances clearly, cogently, and satisfactorily demonstrate that it would be unconscionable to permit a judgment to stand against a party who had no notice of the suit and no opportunity to defend his rights."

See, also, Wolf et al. v. Gills et al., 96

Okla. 9, 219 Pac. 350. If extrinsic evidence may not be introduced to impeach a judgment for fraud not apparent upon the face of the record, there is no remedy, and courts of justice may at once become the aiders and abettors of the grossest and most unconscionable frauds to the great detriment of innocent persons. It cannot be that the law affords no relief where such a situation obtains, and that the judges sitting in temples of justice are bound hand and foot, and are impotent to redress a wrong which they themselves have been made to inflict.

The judgment of the lower court is affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 38 Cyc. p. 1578. (2) 34 C. J. p. 533, § 836. (3) 34 C. J. p. 522, § 827 (Anno).