## HARNESS v. MYERS.

No. 18318. Opinion Filed Feb. 4, 1930.

Rehearing Denied May 13, 1930.

Geo. L. Burke, for plaintiff in error.

J. J. Bruce, for defendant in error.

HEFNER, J. This action was brought in the district court of Creek county, in 1920, by Ada Myers, as plaintiff, the defendant in error herein, against John R. Harness, and another, as defendants, the plaintiff in error herein. The purpose of the action was to recover possession of and to quiet title to the southwest quarter of section 11, township 18 north, range 10 east, and to cancel certain guardianship sale proceedings in the county court of Muskogee county, and deed made pursuant thereto.

It is claimed that the guardianship sale was illegal and void because the appointment of the guardian was irregular and void for the reason that no notice of the hearing on the petition for the appointment of a guardian, except by posting notices as directed by the county judge, was served on the mother, who was the custodian of the minor. It is further contended that notice of the sale of the land was not in compliance with the statute governing guardians' sales and was, for that reason, void. Attached to the petition were copies of the proceedings in the county court for the appointment of a guardian and for a sale of the land, except the order of appointment of guardian and the waiver of the mother of her right to appointment. The defendants demurred to the petition on the ground that it did not state a

148

cause of action. The trial court sustained the demurrer. The case was brought here for review by the plaintiff, and the trial court was reversed on the ground that the posting of notices of the hearing on the petition for appointment of a guardian was not sufficient to give the court jurisdiction, and that the mother and relatives should have some kind of actual personal information, or notice. Former holdings of this court that posting of notices was sufficient were overruled. Myers v. Harness, 116 Okla. 268, 244 Pac. 1109.

When the case was again tried in the district court, after the former appeal, the order appointing the guardian and the waiver of the mother were introduced in evidence. The trial court found that there was no fraud practiced in the sale of the land and that the sale was regular; that the mother of the minor had notice and had waived her right to appointment, but that the step-father also was entitled to actual notice of the hearing on the petition for appointment of a guardian and that the appointment was void because the step-father was not served with such actual notice. The title to the land was quieted in the plaintiff, and the defendant has brought the case here for review.

The land was sold by the guardian in 1910, and suit was brought to recover the same in 1920, soon after the minor became of age.

At the time guardian was appointed in this case, was it necessary for the county judge, before making the appointment, to cause actual notice to be given to the relatives of the minor residing in the county and to any person having the care of such minor, in order to acquire jurisdiction to make the appointment? Section 1431, C. O. S. 1921, reads in part as follows:

"* * * Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county, and to any person having care of such minor."

In the case of Lester v. Smith, 83 Okla. 143, 200 Pac. 780, this court held that the probate procedure of Oklahoma came from California, and there said:

"Section 6522, Revised Laws of Oklahoma, 1910, provides as follows: * * *

"In Asher v. Yorba et al., 125 Cal. 513, 58 Pac. 137, the Supreme Court of California had this same section of the statute under consideration, and laid down the following rule:

"Under Code Civ. Proc. para. 1747, pro-

viding that, before making appointment of a guardian, the court must cause such notice as it deems reasonable to be given to the person having care of the minor, and such relatives as the court may deem proper, posting of notice for 10 days in three public places, under direction of the court, is sufficient.

" 'Under Code Civ. Proc. para. 1747, providing that, before the appointment of a guardian, notice shall be given to such relatives of the minor residing in the county as the court may deem proper, the court has authority to give notice by posting for 10 days in three public places.'

"The probate procedure of Oklahoma was acquired from California. California construed this section in 1899, when the above opinion was rendered by the Supreme Court. It is presumed the Legislature of Oklahoma knew of this decision of the Supreme Court of California and adopted the above statute with full knowledge of this decision. Therefore this decision is very persuasive with us. We think the notice was sufficient."

The section of the statute requiring notice of the appointment of a guardian was construed by the California court in 1899, long before statehood and long before the statute was adopted by this state. In the Smith-Lester Case, supra, this court said that it was presumed the Legislature of Oklahoma knew of this decision of the California court and adopted the statute with full knowledge of the decision. Then, on the advent of statehood, the statute was adopted and it became the law, as construed by the California Supreme Court.

In the Asher-Yorba Case, supra, the California court said:

"* * * Upon a careful reading of the statute it will be found that it is a matter of discretion upon the part of the court to give any notice whatever to the relatives residing in the county. The statute says the notice is to be given to those relatives of the minor residing in the county, 'as the court may deem proper'."

In the case of In re Chin Mee Ho (Cal.) 73 Pac. 1002, decided in 1903, the court said:

"* * * From this it will be seen that the only persons to be notified are those having the care of the minor, and such relatives residing in the county as the court may deem proper. The relatives to be notified and the length of the notice are entirely at the discretion of the judge to whom the petition is presented. * * *"

From 1886 to the present time the California court has uniformly held to this construction of the statute. Burroughs v. De Couts, 11 Pac. 739; In re Lundberg, 77 Pac.

156; In re Morhoff's Guardianship, 179 Pac. 294.

The first time the question was before this court was in 1916, in the case of Crosbie v. Brewer, 68 Okla. 16, 173 Pac. 441. There it was said:

"Plaintiffs next contend that section 6522, Revised Laws of 1910, requires written personal notice to be given to the relatives in the county. That part of the statute referred to reads as follows: * * *

"In the case at bar the court caused three written notices to be posted up in three public places in the county, and plaintiffs argue that this was only constructive notice and was not the notice intended by the above statute. It seems it was the intention of the law to leave the nature of the notice to the discretion of the county judge, and the only notice required to be given was one deemed reasonable by the judge."

The question was again before this court in 1923, in the case of Ross v. Groom, 90 Okla. 270, 217 Pac. 480. A thorough and exhaustive study of the question was there made, and it was said:

"The defendants next contend that the appointment of Hudson as guardian was void because notice of the application for appointment was not personally served on the parents of the minor. As far as the record is concerned, it does not appear whether the parents filed a waiver of notice of the hearing, neither does the order of the county court fixing the date of the hearing on the petition for appointment and the notice which he deemed necessary to be given thereon appear in the record. The defendants attached to their answer a copy of a notice of hearing on the application which was published in a weekly newspaper for two consecutive weeks, and also attached the order appointing the guardian, which recited that notice had been given by publication for two consecutive weeks. In the absence of a statutory provision requiring notice to be given of the appointment of a guardian the appointment can be made without notice. Murphree v. Hansom (Ala.) 72 South. 437; Mahan v. Steele (Ky.) 58 S. W. 446; Kelly v. Edwards, 38 Mich. 210; State v. Bazille (Minn.) 84 N. W. 120; Morehouse v. Cooke, Hopk. Ch. (N. Y.) 228: Farrar v. Olmstead, 24 Vt. 123; * * * Hanly v. Russell, 63 N. H. 614. We must, therefore, look to the statute of this state for the purpose of determining what notice is required to be given for the appointment of a guardian. * * *

"It seems to us that according to the plain language of the statute the only notice required to be given is such as the county judge deems reasonable."

In 1924 the question was again before this

court in the case of Crabtree v. Bath, 102 Okla. 1, 225 Pac. 924. In that case the only notice given was by posting. The notice was held sufficient, and the court said:

"We think that this contention is not a new question, but is disposed of in the case of Asher v. Yorba, 125 Cal. 513, 58 Pac. 137, where, under the same kind of statute, the court said: 'The kind or character of the notice to be given is a matter for the judge to determine.' And, where personal notice is not absolutely required, a notice by posting is sufficient.

"In the case of Ross v. Groom, 90 Okla. 270, 217 Pac. 480, being case No. 14005 on the docket of this court, in construing this same statute, this court said:

" '* * * Under our statute, personal notice on the relatives of the minor residing in the county, or persons having the care of the minor, is not required, but only such notice as the county judge deems reasonable.'

"The notice having been given by posting, in accordance with the direction and order of the county judge, and the county court being a court of general jurisdiction in probate matters, we think, under the above construction of the statute, in the light of the principle laid down in the case of Wolf v. Gills, 96 Okla. 6, 219 Pac. 350, * * * that the allegations of the petition on this ground did not state a cause of action, and the demurrer was properly sustained."

In the very thorough review of the question in the case of Ross v. Groom, supra, it is shown that since 1886 the California courts have uniformly held that the manner in which the notice shall be given to the relatives of the minor residing in the county, and to the persons having the care of the minor, is left to the judgment and reasonable discretion of the probate judge, and that probate sales in this state, since statehood, have been made according to the interpretation placed on the statute by the California court. That is the construction that had been placed on the statute by the California courts at the time the statute was adopted by this state. Since statehood it has been uniformly followed by the judges and the bar of this state, and by this court until this case was here on the former appeal in 1925, when the former decisions of this court were overruled and for the first time in this state it was held that personal service must be had on the relatives and on the person having the care of the minor before the court could acquire jurisdiction to appoint the guardian. We therefore hold that at the time Westlake was appointed guardian herein it was not necessary for the

county judge to cause actual notice to be given to the relatives of the minor residing in the county and to any person having the care of the minor, in order to acquire jurisdiction to make the appointment.

In the Lester-Smith Case, supra, this court held that the probate procedure of Oklahoma was acquired from California and that California had construed this section in 1899, in the case of Asher v. Yorba, supra, and that it was presumed the Legislature of Oklahoma knew of this decision of the California court and adopted the statute with full knowledge of the decision.

In 25 R. C. L. 1070, § 294, it is said:

"It is the well-settled general rule that when a statute has been adopted from another state or country, the judicial construction already placed on such statute by the highest courts of the jurisdiction from which it is taken accompanies it, and is treated as incorporated therein. The presumption, in the absence of an expression of legislative intention to the contrary, is that the law was enacted in the light of the construction given it by the courts of the state or country from which the statute was taken. The same rule applies when a state statute has been literally or substantially adopted by a territorial Legislature, or by Congress, or is imposed by Congress on a United States territory."

We hold, therefore, that after statehood, and prior to the decision in this case on the former appeal in 1925, it had been the uniform rule that no personal service of notice of the appointment of a guardian was required, but that on such appointment it was discretionary upon the part of the county judge to give such notice as was deemed reasonable to the relatives residing in the county and to any person having the care of the minor.

In this case, B. F. Westlake filed his petition praying for his appointment as guardian in the county court of Muskogee county on the 31st day of March, 1909, and alleged, in part, that the minor had no guardian, that she was six years of age, resided at Boynton, Okla., and was under the care of Ellen Smith, its mother, and that the father, Lewis Myers, was dead. The records of the county court of Muskogee county show that on the 31st day of March, 1909, the county judge entered this order:

"And comes B. F. Westlake, and files and presents to the court his petition, praying for his appointment as guardian of the above-named minor, and the court being well and sufficiently advised in the premises, doth order that said petition be, and it is hereby set for hearing on the 16th day of April, 1909, and that notice thereof be given for ten days, by posting three notices in three of the most public places in Muskogee."

The order was made on the 31st day of March, 1909, and the hearing was set for the 16th day of April, 1909, and the order directed that notice thereof be given for ten days by posting three notices in three of the most public places in Muskogee. In pursuance of this order the county judge issued the following notice:

"Notice is hereby given that B. F. Westlake has filed in said court a petition, praying that B. F. Westlake be appointed guardian of Ada Myers, minor, and that Friday, the 16th day of April, 1909, at 10 o'clock a. m. of said day, being a day of a regular term of this court, to wit, of the April term, A. D. 1909, at the county court room in Muskogee in the county of Muskogee, at Muskogee, when and where you are hereby cited to appear and show cause, if any you have, why the said petition should not be granted.

"Witness the judge of said court, and the seal thereof affixed this 31st day of March, A. D. 1909."

The affidavit of posting shows that one copy was posted at the courthouse, one at the Indian Agency door, and one at the post office, and that said notices were posted on the 31st day of March, 1909.

On April 16, 1909, the mother filed this waiver:

"To the Honorable W. C. Jackson, County Judge:

"I hereby waive my right to be appointed guardian of my daughter, Ada Myers, and request that B. F. Westlake be appointed guardian for said Ada Myers."

In the Lester-Smith Case, supra, George Williams, the person making application for appointment as guardian, was the step-father of the minor, and the minor resided with the step-father and its mother. The county judge ordered that notice of the hearing be given by posting notices in three public places in Carter county for ten days before the day of hearing. This was the only notice given of the appointment. The appointment was upheld in that case, and the appointment was made on the 20th day of February, 1911. The defendant Harness, in this case, acquired his deed to the land on the 25th day of February, 1911. In this case, the minor had a step-father and a mother. The mother filed a waiver and requested the appointment of Westlake. In the Lester-Smith Case the application was made for and on behalf of the step-father,

without any application or waiver from the mother.

In the Ross-Groom Case, supra, the application for appointment of guardian was filed on May 13, 1910, and the point was made that the appointment of Hudson as guardian was void because notice of the application for appointment was not personally served on the parents of the minor. This court upheld the appointment.

In the Crabtree-Bath Case, supra, William Hunter was appointed guardian in 1909, which was prior to the time of the appointment of the guardian in the case at bar. The appointment was upheld by this court. The court further held that the question was not a new one in this state, but was disposed of in the case of Asher v. Yorba, supra. The Asher-Yorba Case was decided in 1899.

It therefore follows that under the law of this state, in force at the time this guardian was appointed, the posting of notices in three public places, pursuant to order of the county judge, as was done in this case, was sufficient to give the court jurisdiction to make the appointment. The appointment was therefore valid.

It is the duty of the county judge, when a petition is filed before him asking for the appointment of a guardian, to make inquiry as to the person having the care of the minor and its relatives. When these facts are made known to him, he is then in a position to know what character of notice should be given and to whom it should be given. The statute uses the word "relatives." This is a very indefinite term. In many cases it would be difficult to ascertain the names of the relatives; and again, there might be unknown relatives in the county. If the minor had a father and mother living and they had the custody of the child, and a stranger was asking to be appointed as guardian, of course a judge, who performs his official duty, would require some sort of actual notice on the parents. If the minor had no parents, the judge would doubtless make inquiry as to the identity of the near relatives, and after getting this information, would require such notice to be given them as he deemed reasonable. In the instant case the petition advised the county judge that the father was dead and that the child was living with its mother. The mother filed a waiver and requested the appointment of Westlake as guardian. She, of course, had actual notice of the appointment. The record discloses that no notice

was served upon the step-father. The proceedings, however, were in compliance with the law as it existed at the time this guardian was appointed, and, since this is true, the rights accruing to the purchaser at guardian's sale, and to subsequent purchasers, cannot be disturbed by reason of the fact that at a later date the law was changed by judicial construction. In the case of Douglass v. Pike County, 101 U. S. 677, 25 L. Ed. 968, Mr. Chief Justice Waite, speaking for the Supreme Court of the United States, said:

"* * * The true rule is to give a change of judicial construction, in respect to a statute, the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means of a legislative enactment."

We hold that, since the appointment of the guardian was in compliance with the statute, at the time it was made, the fact that at a later date this court gave a different construction to the statute could not affect rights acquired by the purchaser at the guardian's sale, and that all rights accruing to the parties under the law as it existed previous to the subsequent construction of the statute by this court in this case on its former appeal cannot be disturbed. In other words, the construction placed by the court on the statute is not retroactive, but prospective, and, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means of legislative enactment.

Since the sale was made and the guardian was appointed in accordance with the law as it existed at the time the sale was made and the guardian was appointed, the plaintiff cannot recover herein on the ground that the appointment of the guardian was void.

In the former appeal of this case the record disclosed that the trial judge sustained a demurrer to the petition. This court, on appeal, held that the demurrer should have been overruled. The case was reversed, the demurrer was overruled, and an answer was filed. When the case was again tried, the order appointing the guardian and the waiver of the mother were introduced in evidence. This makes an entirely different

state of facts from that presented by the demurrer on the former appeal. The waiver filed by the mother shows that she had actual knowledge of the application for appointment. On the hearing of the application for appointment, the court entered this order:

"And comes on for hearing the petition heretofore filed herein by B. F. Westlake, praying for his appointment as guardian of the above-named minor, and it appearing to the satisfaction of the court that sufficient notice of this hearing has been given as appears by proof of posting notices filed herein on this day and by waiver of notice of hearing said petition by the mother of said minor, and her request for the appointment of said petitioner, and the court having heard said petition, and being well and sufficiently advised in the premises, doth grant the prayer of said petition, and doth order that the said B. F. Westlake be, and he is hereby appointed guardian of the said Ada Myers, a minor, upon his taking and subscribing the oath of office as required by law, and executing a bond as required by law in the penal sum of $500 with sufficient sureties to be approved by the judge of this court.

"And comes B. F. Westlake, and in compliance with the above order of this court, files and presents to the court his bond in the sum of $500 with the Southern Surety Company as surety thereon for his appointment as guardian of said minor, and the court having examined said bond and being well and sufficiently advised in the premises, doth approve the same, and doth order letters of guardianship to issue herein to the said B. F. Westlake."

This record discloses that notice was posted in three public places in Muskogee, and that the minor was in the care of its mother and step-father, and that she had actual notice of the application for the appointment of the guardian. We hold that this was sufficient notice, under our statute, to give the court jurisdiction to make the appointment. Since this is true, the plaintiff cannot recover herein on the ground that the appointment of the guardian was void.

The defendant in error contends that the record on this appeal presents the same questions of fact and law for determination as were presented by the record on the former appeal, and urges that the issues involved herein are res adjudicata. There is a very learned discussion of the question of res adjudicata in the case of State of Wisconsin v. Torinus (Minn.) 9 N. W. 725. There it was said:

"* * * The doctrine of res adjudicata, or estoppel by judgment, as it is sometimes less accurately termed, is a rule of law founded on the soundest consideration of public policy. It means that if an action be brought, and the merits of the question be discussed between the parties, and a final judgment be obtained by either party, the parties are concluded, and cannot again canvass the same question in another action. It is founded upon two maxims of the law, one of which is that 'a man should not be twice vexed for the same cause,' the other that 'it is for the public good that there be an end of litigation;' and it is undoubtedly true that if there be any one principle of law settled, it is that whenever a cause of action, in the language of the law 'transit in rem adjudicatam,' and the judgment thereupon remains in full force and unreversed, the original cause of action is merged and gone forever. After judgment on the merits a party cannot afterwards litigate the same question in another action, although some argument might have been urged on the first trial that would have led to a different result. Such a judgment is final and conclusive, not only as to matters actually decided, but as to every other matter which the parties might have litigated and decided as incident to and essentially connected with the subject-matter of the litigation as the facts then existed.

"The discovery of new evidence not in the power of the party at the former trial forms no exception to the rule. The doctrine is so just, and so necessary to the peace and good order of society, that we have no desire to either modify it or unreasonably limit its application. But before we apply the rule that no one should be twice vexed for the same cause of action, we ought to be well assured that the cause of action is the same. As remarked by Cowan, J., in discussing the subject of 'Res Adjudicata' (People v. Mercein, 3 Hill (N. Y.) 399: 'If the cause of action be the same, the claim should be held extinguished. Where an entire right has been once litigated and passed on upon its merits, it should not be stirred up again. To allow a second trial in such a case would be against public policy. But it would be likewise unjust to cut off substantial rights which have not and never could have been tried, for the reason that they did not exist, or were disallowed at the moment for some fleeting cause which has ceased to exist. An estoppel, though admissible in a case precisely the same with that adjudged, has no application to one which is in its own nature ambulatory, and which has ceased to be the same by progression.'

"According to all the authorities it would be necessary in the present case, in order that the judgment in the former action should be a bar to a recovery in this action, that the 'cause of action' in the two

should be the same. This proposition defendants do not controvert. Care must be taken also to distinguish between **identity of the subject-matter of litigation** and **identity of cause of action,**—a distinction often overlooked. The subject-matter of litigation may be the same, and yet the causes of action entirely different. Therefore, there is a well-settled rule of law on the subject of res adjudicata that a former adjudication never affects **after-acquired rights.** A judgment cannot prejudice rights which had not accrued to either' party at the time of its rendition."

In the present case the trial court, on the former appeal, sustained a demurrer to the petition. The case was appealed to this court and the judgment was reversed and remanded. An answer was filed controverting some of the material facts alleged in the petition. The order of the court appointing the guardian was introduced in evidence. The waiver of the mother, requesting the appointment of Westlake as guardian, was introduced in evidence. While the subject-matter of the litigation is the same, it presents an entirely different cause of action. There was no judgment at all on the merits of the case on the former appeal. The former appeal, therefore, is not res adjudicata.

It is further contended that the judgment of the trial court should be affirmed because of the failure to serve the order of hearing the petition for sale of real estate upon the relatives, next of kin, and persons having the care and custody of the ward, pursuant to section 1472, C. O. S. 1921. The order of hearing the petition for the sale of the real estate only provided that a copy of said order should be published for three successive weeks. The publication was the only service made of the order. This section was amended in 1910, and at the time the sale was had herein the notice could be served either by publication or by being personally served on the next of kin. The amendment did not become effective until June 17, 1910. The order of sale was made March 4, 1910, the real estate was appraised March 26, 1910, and the sale was confirmed June 13, 1910. The statute in force at the time the sale was made was section 1846, Wilson's Rev. & Ann. Stat. of 1903, and is as follows:

"A copy of the order must be personally served on the next of kin of the ward, and on all persons interested in the estate, at least' 14 days before hearing of the petition, or must be published at least three successive weeks in a newspaper printed in the county, or if there be none printed in the county, then in such newspaper as may be specified by the court or judge in the order. * * *"

Service of the order of sale was made by publication for three weeks in the Muskogee Times Democrat and in the Sapulpa Light of Sapulpa. In the case of Eaves v. Mullen, 25 Okla. 679, 107 Pac. 439, it was held that the above statute did not authorize the court to require that service be made by both methods.

The judgment of the trial court is reversed, with directions to enter judgment in favor of the defendants.

MASON, C. J., LESTER, V. C. J., and HUNT, CULLISON, SWINDALL, and ANDREWS, JJ., concur. RILEY, J., dissents. CLARK, J., not participating.

---

RILEY, J. (dissenting). The law of this case was stated in the former appeal, 116 Okla. 268, 244 Pac. 1109. Therein this court held (overruling three cases now cited in the majority opinion) that both the mother and the stepfather of the minor were entitled to personal service or actual notice, and, moreover, that posting notices, or such notice as the county judge deemed reasonable, did not authorize or justify the substitution of such constructive notice as exists in this case. We held that failure to give proper notice deprived the court of jurisdiction of the minor and his property. Therein we said, as to the urged discretionary power of the county judge as to constructive notice:

"We cannot agree with this contention. The statute quoted clearly contemplates that the relatives in the county and persons having the care and custody of the ward should have some kind of actual information of the hearing of the petition for the appointment of the guardian. To hold that the posting of notice in three public places in Muskogee county is sufficient, in view of the fact that the mother and stepfather of the minor residing in Muskogee county had the care and custody of the minor, would be to place a construction upon said section of the statute not within the intent of the Legislature.

"It is true the statute gives the county judge discretion to select such means as he deems reasonable in informing the relatives of the time and place of the hearing of the petition for appointment of a guardian, but it was never intended, we think, in so important a matter as appointing a guardian for a minor child living with its parents in the jurisdiction of the court, to give only constructive notice of such hearing.

"Actual notice is required to be given to

the relatives of a minor residing in the county where guardianship is sought whenever actual notice of the time and place of hearing can be had on such relatives; the method or manner of giving such actual notice to be such as the county judge deems reasonable. In other words, the clear meaning of the statute, as we view it, is that constructive service is to be resorted to only in those cases where there can be no actual service made."

The court in the majority opinion states the issue now before us:

"The trial court found * * *that the mother of the minor had notice and had waived her right to appointment, but that the stepfather also was entitled to actual notice of the hearing on the petition for appointment of guardian and that the appointment was void because the stepfather was not served with such actual notice."

But this court fails to decide that issue as stated. I think, and, therefore, state, that we should decide that issue. However, this court, in my opinion, committed a more grievous error than failure to decide an issue submitted. It violated for the first time, to my knowledge, the law of the case where no manifest or gross injustice had been done. In doing so it relied upon cases, theretofore in the case, between the same parties expressly overruled, as well as the doctrine therein which includes other cases. Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612; Ross v. Groom, 90 Okla. 270, 217 Pac. 480; Crabtree v. Bath, 102 Okla. 1, 225 Pac. 924. It by inference overruled other decisions, yet found that the minor "was in the care of its mother and stepfather"; that the mother had actual notice and that was sufficient without any notice to the stepfather other than constructive notice by posting as aforesaid. This court says that the former decision in this case is not binding. I cannot agree. Powell v. Milling Co., 107 Okla. 170, 231 Pac. 307; Wade v. Hope, 89 Okla. 64, 213 Pac. 549; Henry v. A., T. & S. F. (Kan.) 109 Pac. 1005, 8 A. L. R. 1033, and 1 A. L. R. 1262.

The rule of law of the case is well stated in 4 C. J. 1096:

"Again the rule has been said to be 'necessary to enable an appellate court to perform its duties satisfactorily and efficiently, which would be impossible if a question, once considered and decided by it, were to be litigated anew in the same case upon any and every subsequent appeal.' If a different rule were admitted, it is said, every change in the personnel of the bench would produce confusion."

In Metropolitan Ry. Co. v. Fonville, 36

Okla. 76, 125 Pac. 1125, the rule of the law of the case was applied where the former appeal was in the territorial court:

"A decision of the Supreme Court of the territory of Oklahoma on a former appeal became the law of the case and governs this court, as well as the trial court, as to the questions decided on that appeal." See, also, Smith v. Kennedy, 85 Okla. 163, 207 Pac. 729.

Mr. Justice Hefner stated the rule of law of the case in Doyle-Kidd D. G. Co. v. Ingram, 126 Okla. 161, 259 Pac. 211, and found foundation for such rule in the cases following:

"This court having held on a former appeal that the trial court should have directed a verdict for the defendant at the close of all the evidence, and inasmuch as there is no substantial difference in the facts presented in this case from those presented in the case when it was here before, the decision of the former appeal is controlling." Carroll v. Worley, 127 Okla. 173, 260 Pac. 3; Johnson v. Taylor, 131 Okla. 113, 267 Pac. 1052; Bass Furn. & Carpet Co. v. Finley, 129 Okla. 40, 263 Pac. 130; Powell v. United Mining & Milling Co., 107 Okla. 170, 231 Pac. 307; Kirby v. Hardin, 41 Okla. 609, 134 Pac. 854; Sovereign Camp W. O. W. v. Bridges, 37 Okla. 430, 132 Pac. 133; Reed v. Robinson, 92 Okla. 107, 219 Pac. 296; Mickelson v. Helm, 89 Okla. 90, 214 Pac. 117; Midland Sav. & Loan Co. v. Sutton, 93 Okla. 230, 220 Pac. 663; Cleveland v. Mascho, 95 Okla. 22, 222 Pac. 1008; City of Yale v. Noble, 113 Okla. 106, 239 Pac. 463; Kingfisher Imp. Co. v. Talley, 51 Okla. 226, 151 Pac. 873; Corder v. Purcell, 50 Okla. 771, 151 Pac. 482; City v. Colbert, 52 Okla. 235, 152 Pac. 603; Producers v. Maple Co., 133 Okla. 224; 52 Okla. 769; 41 Okla. 122; 53 Okla. 379; 58 Okla. 22; 63 Okla. 169; 85 Okla. 163; 62 Okla. 263; 73 Okla. 40; 62 Okla. 112; 68 Okla. 240; 62 Okla. 109; 21 Okla. 503; 39 Okla. 565; 36 Okla. 76; 37 Okla. 48; 25 Okla. 199; 90 Okla. 195; 98 Okla. 47; 4 C. J. 1093-1099-1213-1321; 5 Cyc. 49, 492.

This court justifies itself by stating that the law as determined at the time of the instant appointment of guardian and sale upheld constructive notice. I say not so. There is not a case cited that was decided as of the date of this sale—those cases we decided ten years later.

Lester v. Smith, 83 Okla. 143, 200 Pac. 780, decided June 28, 1921, is cited to show "The court held that the probate proceedings of Oklahoma came from California," which is error, for the law did not come from California, but from Dakota. Then Asner v. Yorba, 125 Cal. 513, 58 Pac. 137,

is cited as supporting the issue before us. It does not support it, for there the parent, who had custody of the child, was appointed guardian—not a stranger, as herein. Again in the majority opinion it is said the statute. section 1431, C. O. S. 1921, was adopted from California, which is repetition of error. The statutes are not identical, but with an entirely different wording and meaning. A construction of the California courts is relied upon, which in no way is binding upon us, but even if persuasive, that influence ought to secure a result diametrically opposed to the majority decision, for it has always been the law in California that those in custody of the minor must have notice, and no California case, past or present, has held posting of notice was sufficient as notice to those in custody of the minor, but have uniformly held to the contrary.

The California case of In re Chin Mee Ho, 73 Pac. 1002 (1903) so holds, contrary to the majority opinion, and there is no departure in California from that rule. Therein in effect the custodians are declared to be entitled to actual notice, relatives are distinguished and are said to be governed by their discretionary statute. That is a habeas corpus case. Burroughs v. DeCouts (Cal.) 11 Pac. 739; In re Lundberg (Cal.) 77 Pac. 156; In re Morhoff's Estate (Cal.) 178 Pac. 294.

Particularly I cite In re Eikernkotter's Estate, 126 Cal. 54, 58 Pac. 370, where the Supreme Court of California in 1899, and subsequent to the decision in Asher v. Yorba, of the same year, construed section 1747 of their code, wherein a stranger, as herein, sought the appointment as guardian, and it was held:

"Code Civ. Proc. section 1747, declaring that, before a court shall appoint a guardian of an infant, it must cause such notice as it deems reasonable to be given to the person having the care and custody of the infant, is mandatory; and without such notice the court has no power to make an appointment."

In the body of the opinion it was held:

"Among other matters, sec. 1747, of the Code of Civil Procedure declares 'Before making such appointment the court must cause such notice as such court deems reasonable to be given to any person having the care of such minor.' By virtue of this provision of the statute, it is mandatory that the person having custody of the minor should have notice of the hearing. Such notice is absolutely necessary to give the court jurisdiction of the proceedings, and power to make the order of appointment." In re Dahnkes Estate (Cal.) 222 Pac. 381;

In re Pryors Guard. (Cal.) 229 Pac. 60; In re Arkles Estate (Cal.) 269 Pac. 689; In re Forrester (Cal.) 123 Pac. 283; In re Mathews (Cal.) 145 Pac. 503; In re Mores' Est. (Cal.) 176 Pac. 461.

"Under Code Civ. Proc. sec. 1751, the father of a minor under 14 years is entitled, as a matter of right, to the guardianship of such minor, unless shown to be incompetent, and competency is presumed and should be so found by the court in the absence of evidence to the contrary." In re Tetsebumi Yano's Estate (Cal.) 206 Pac. 995; In re Salter (Cal.) 76 Pac. 51; In re Aker's Est. (Cal.) 194 Pac. 706; In re Taylor's Est., 131 Cal. 180, 63 Pac. 345; In re Wise's Est. (Cal.) 177 Pac. 277; Mathews Est. (Cal.) 164 Pac. 8; Morhoff's Est. (Cal.) 178 Pac. 294.

Herein the mother is said to have notice by filing a waiver of appointment. Granted. Query. Was the stepfather eligible to appointment as guardian? Did he waive his right? Ans. No. Did he have actual notice? Not by service. Did actual notice to the mother constitute actual notice to him? The trial court found on page 95 case-made as to the stepfather, Isaac Smith:

"And his testimony is uncontroverted that he had no notice of it. So, if he is entitled to notice, he has had none, and, following the expression of the Supreme Court in this case itself, then the appointment would be void because he didn't have any notice of it. * * *The whole record consisting of record testimony, except brief testimony of the stepfather on the stand wherein he says he didn't have any notice of the appointment of the guardian, and I will have to find, on a matter of fact, that Isaac Smith didn't have any notice of the appointment of the guardian. * * * I come to the irresistible conclusion that, after reading the opinion of the Supreme Court * * *that this stepfather was one of the parties having care and custody of this minor and a resident of the county at the time of the filing of the application for the appointment of guardian, was entitled to notice the same as Ellen Smith, the mother, and that without it jurisdiction of the county court of Muskogee county to appoint a guardian was never acquired, and, therefore, the appointment was void under the authority of this case as adjudicated in the Supreme Court."

B. F. Westlake, a stranger, filed the petition for appointment of the guardian. The California law and the law of this case is that posting of notices is not sufficient to give the county court jurisdiction to appoint a guardian, where the petition for appointment is filed by a stranger, and where no actual notice or service of notice

156

is had upon the **persons** (plural) having the custody of the minor, but such appointment without such notice is without jurisdiction and void.

The majority opinion is in conflict with decisive cases rendered by this court, as follows, to wit:

"Under section 1431, C. O. S. 1921, and the allegations of the petition, it was essential that the father having the care of the minor child in the county should have had notice of the application **of a stranger to be appointed guardian of such minor before the court could acquire jurisdiction.**" Smith v. Page, 117 Okla. 223, 246 Pac. 217; Myers v. Harness, 116 Okla. 268, 244 Pac. 1109; McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739; Walton, Mayor, v. Donnelly, Com'r, 83 Okla. 233, 201 Pac. 367; Carlile v. Natl. O. & D. Co., 83 Okla. 217, 201 Pac. 377; Harris v. Bell, 250 Fed. 209; DeHasque v. A., T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73.

In the former opinion in this case we said, through Mr. Justice Phelps:

"The rule and doctrine laid down in Ross v. Groom, 90 Okla. 270, 217 Pac. 480; Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612, and Crabtree v. Bath, 102 Okla. 1, 225 Pac. 924, in so far as they are in conflict with the views herein expressed, are expressly overruled."

Crosbie v. Brewer, 68 Okla. 16, 173 Pac. 441, cited in the majority opinion, shows by the text that:

"The father and mother also filed in writing a waiver of their right to be appointed guardian, and requested the appointment of the said Brewer."

That was actual notice. Also that:

"On February 16, 1914, about 8:20 a. m., the petition of Norris Carney and wife was filed in the county court of Carter county."

That was actual notice.

So that now I say that case is not controlling or even persuasive as supporting the majority opinion. Moreover, the question there considered and decided does not touch hair nor hide of the question here. There the original guardian was discharged and a new one appointed, and there this court held that in the second appointment no notice is necessary.

"Where the guardian of the estate of a minor is properly appointed in the first place, the court acquires jurisdiction to administer its estate and may, upon the removal of said guardian, under section 6578, R. L. 1910, appoint a successor, without notice under said section."

That portion of the quotation from the Brewer Case omitted and shown by asterisks is:

"Such appointment may be made on the petition of a relative or other person in behalf of such minor."

That was the exact situation in that case —not so in the case at bar. (Section 6522, R. L. 1910, is the same as section 1431, C. O. S. 1921.) Again, the facts were vastly different, for therein it was said, "We have assumed that the taking up of his residence in Carter county by Norris Carney and wife with their child. Albert Carney, was bona fide. * * *" Whereas, the guardian, Brewer, was appointed in Pittsburg county, so that, since it was impossible to serve process or notice upon those in custody, due to their absence from the county, constructive notice by posting in that case was sufficient. Not so in the case at bar. Herein persons in custody lived in the county where the appointment was made.

As to Ross v. Groom, 90 Okla. 270, 217 Pac. 480, all we can now say is that the doctrine in that case was by this court adjudicated to be in error, as a part of the law of the case at bar. The conclusion therein reached may have been right, for we cannot tell where the guardianship case arose. The case on appeal came from Creek county. It appears that the petition for the appointment of the guardian, in whatever county it was, recited that "the persons having the care of Costella Lackey (minor) were Frank Lackey, father, and Jane Lackey, mother, whose postoffice address was Wagoner, Okla. Now we know judicially that Wagoner, Okla., is not in Creek county; further, that in the event the guardianship proceedings were not in Wagoner county, that it would be impossible to give service of notice, and perforce constructive service by posting would suffice."

Crabtree v. Bath, cited, simply follows Ross v. Groom, and falls into the same error as adjudicated by the law of this case.

Wortham v. John, 22 Okla. 562, 98 Pac. 347, is an early case (1908) not cited heretofore; it appeals to the writer as good law; under similar statutes and reasoning it was the law of the land then:

"The order appointing said Wortham, as such, in the first instance, is indefensible. * * * Said letters were issued to Wortham on his petition without notice to any of them. Assailing this order, it is contended that the jurisdiction of the court to make it depended on notice to the mother. With this contention we agree. The jurisdiction

of the probate court is founded on statutes which should be strictly construed."

Shouler's Domestic Relations (4th Ed.) 499, 450, sec. 303, says:

"The court of chancery exercises a large discretion. Its authority over the persons and estates of infants, idiots, and lunatics cannot be questioned elsewhere. No tribunal short of the Legislature can interpose a check upon its powers. But it is different with probate courts. Their jurisdiction is founded upon local statutes, maintained in derogation of the common law, made subject to supervision of supreme tribunals, and confined to the exercise of special powers sparingly conferred. * * * With special strictness are the powers of probate tribunals scrutinized in matters which do not grow out of the settlement of estates of deceased persons."

Wortham v. John, supra:

"The notice thus required to be issued by the court was not merely directory, but a condition precedent to the vesting of jurisdiction in the court to make the appointment unless the parent appear voluntarily, and as no notice was given, and the mother did not voluntarily appear, the order appointing Wortham was void. Mr. Woerner, in his work (American Law of Guardianship), on p. 95, says:

"'That no guardian can be appointed to the person of an infant having father or mother living, not declared unsuitable by a court of competent jurisdiction, nor a guardian or curator to an infant whose father or mother is entitled, under the law, to take charge of its estate as natural guardian, has already been pointed out as the law in most states. But parents may be adjudged incompetent or unfit to have the custody, care, and education of their children in proceedings for that purpose by a court having jurisdiction, in which proceeding the parents must be made parties, by notice to them enabling them to appear and be heard, unless they appear voluntarily. It is a fraud on the rights of a father to obtain guardianship of his child without his knowledge; and the appointment of a guardian to an illegitimate child, or to a legitimate child, after its father's death without notice to the mother is void'—Citing Sensemann's Appeal, 21 Pa. 331; Bowles v. Dixon, 32 Ark. 92; Bryan v. Lyon, 104 Ind. 227, 3 N. E. 880, 54 Am. Rep. 309. See, also, Spears and Wife v. Snell, 74 N. C. 210; In re Jacquet, 40 Misc .Rep. 575, 82 N. Y. Supp. 986; Dalton v. State, 6 Blackf. (Ind.) 357.'"

And quoting from Redman & Wife v. Chance, Guard., 32 Md. 42, it was said:

"The only power conferred on the orphans' court to appoint guardians for infants, if the father or mother was living, was derived from a section of the Code of that state as follows:

"'The orphans' court shall have the right and power to appoint a guardian to any such infant as aforesaid, although such infant may have a father or mother living at the time of the appointment; provided, notice by the court be given by publication or otherwise, to such father, or mother (if there be no father living), to show cause why such an appointment should not be made.'

"The Supreme Court reversed the order of the lower court, and in passing, speaking of that provision of the Code, said:

"'In thus recognizing the common-law right of the parent to the guardianship of the child, the Legislature was careful to guard against the appointment of any other person, except upon notice to the father or mother, if living, and a strict compliance with this provision of the statute was therefore made a condition precedent to the exercise of the power conferred."

"Speaking of the event of a failure to give notice, the court further said: 'We are clearly of opinion, therefore, that in such a case the father or mother, if living, may, by petition or other proceeding in the same court, attack the order itself. This general principle has been repeatedly recognized in courts of law and equity, where parties have been allowed, by an independent proceeding, to impeach judgments and decrees rendered without notice'—and sent the case back to the lower court to determine the fact whether the mother was not served with notice as alleged in the petition.

"The order being thus seen to be void, and not merely voidable, it is unnecessary to consider the further contention of plaintiff in error that, being voidable, it could not be set aside after the expiration of the term of court at which it was made. A void judgment or order may be set aside at any time. Nor can we review the action of the court refusing to cancel the lease complained of, for the reason that plaintiff in error did not appeal therefrom and no cross-appeal has been prosecuted from that part of the order by defendant in error. Neither is it necessary to discuss an alleged waiver of notice by the mother, in an alleged conversation with Wortham before his appointment, for the reason that the testimony not being preserved, and the master's report being silent on this point, we cannot consider it. Besides, as held by the court in the Redman Case, supra, the judgments of the probate court in this and other matters will not be permitted to rest in parol. The notice mentioned in section 3477 means legal notice issued by the court, and which seems to contemplate notice in the nature of a summons which cannot be

dispensed with unless, as stated, by voluntary appearance in the person required to be notified."

The Lester-Smith Case, relied upon, 83 Okla. 143, 200 Pac. 780, was adjudicated to be wrong by being specifically overruled in the law of this case. The writer is bound by that adjudication; however, he thinks and believes, and, therefore, states, that the case of Lester v. Smith may be correct. Therein no stranger was appointed guardian. Geo. M. Williams was "the father and stepfather of said minor." Wesley Lester was the minor. Ella Williams the mother. The marriage of Ella and George M. did not occur until "subsequent to the birth of the said Wesley Lester. Wesley Lester nominated his said father and stepfather guardian. So no issue is left undecided there. "Said minors reside with petitioner (Geo. M. Williams) hear Fox, Carter county, Okla." So no issue arose as to who had custody. Therein for the first time in Oklahoma, according to reported cases, Asher v. Yarba, supra, was even persuasive, and therein such law, in my judgment, was decisive. Therein, most sure, the person in custody had actual notice, for he was appointed guardian. Now it does not appear in the Lester-Smith Case that any attack was made because the mother did not have actual notice. We must presume she did have such notice, where the issue is not raised. County judge exercising discretion and ordering posting notice binds all except those in custody and residing within the county. Posting of notice, within the discretion of the county judge, under California, is good as against every relative in the world, within the county and without the county, except those having custody of the minor. And as in Asher v. Yorba, supra, and as in Lester v. Smith, supra, where the relative-custodian is appointed and not a stranger. it may be that posting of notice, or no notice, for that matter, where the county judge finds it is not necessary, would be sufficient under California Code. At least, it would be sufficient if those in custody had actual notice.

Where the majority opinion on p. 10 says:

"In the Lester-Smith Case the application was made for and on behalf of the stepfather, without any application or waiver from the mother"

—it misstates the fact. It should say there is no showing of application or waiver from the mother, but that question was not in that case, and the showing therefore immaterial.

It is said in the majority opinion, p. 11: "If the minor had a father and mother living and they had custody of the child, and a stranger was asking to be appointed as guardian, of course, a judge, who performs his official duty, would require some sort of actual notice on the parents."

With that statement of the law I heartily agree, and proclaim, moreover, that a stepfather is the same as a father in the eyes of the law in every adjudicated case, civil and criminal, that I have seen, as well as in the days of the old patriarchs, where the man was the head of the household, where society and government had its inception. Wells' Outline of History. And I now state a query to the majority of my distinguished associates: How in reason is the Supreme Court of this state to enforce the performance of official duty on the part of a county judge in relation to the appointment of a guardian, as stated, without the requiring of actual notice to parents, where a stranger seeks appointment as guardian, unless we say so in the proper case, such as this?

The statement that: "The proceedings, however, were in compliance with the law as it existed at the time this guardian was appointed * * *and that rights accruing to the purchaser at guardian's sale, and to subsequent purchases, cannot be disturbed by reason that at a later date the law was changed by judicial construction", is not the fact. No Oklahoma case has been cited that construed this law as is done in the majority opinion or in Ross v. Groom (July 24, 1923) 90 Okla. 270, 217 Pac. 480; Crabtree v. Bath (April 22, 1924) 102 Okla. 1, 225 Pac. 924; Crosley v. Brewer (Feb. 26, 1918, rehearing—not in issue here) 68 Okla. 16, 158 Pac. 388, 173 Pac. 441—at a date closer than twelve years to the date of this appointment, which occurred February 20, 1911.

What constitutes notice?

"It is a well settled rule of law that where a statute requires notice to be given, actual personal notice is required and the notice must be personally served on the person to be notified." 20 R. C. L. 943.

"Notice—Generally notice, in its legal sense, may be defined as information concerning a fact actually communicated to a party by an authorized person, etc." 29 Cyc. 1113A.

"Notice is information of a condition affecting an existing right." Fed. Life Insurance Co. v. Whitehead, 73 Okla 71, 174 Pac. 784.

"Statutory notice" held to mean actual knowledge. Ky. Lbr. Co. v. Ky. Title Co., 184 Ky. 244; Ross v. Breene, 88 Okla. 37, 211 Pac. 417.

The jurisdiction and procedure in the probate courts are statutory, and the law requires a full compliance with the statute in the appointment of guardians.

Now the statutes in California and Oklahoma are similar as to provision for notice to persons having care of the minor, but essentially different in the provision for notice to the relatives of a minor.

The California statute, set out in Re Lundberg, 77 Pac. 156, reads:

"Before making such appointment, the court must cause such notice as the court deems reasonable to be given to any person having the care of such minor, and to such relatives of the minor residing in the county, as the court may deem proper."

Our statute, section 1431, C. O. S. 1921, omits the qualifying words "as the court may deem proper." Consequently it may be said with great reason, and under the rule of strictissimi juris, the Oklahoma statute makes notice to all relatives of the minor residing in the county and to persons having the care of the minor mandatory and jurisdictional. I say emphatically that the custodians in the county must have actual notice.

Now, following the reasoning in Asher v. Yorba (Cal.) supra, under the phrase, "as the court may deem proper:"

"If the court has the power to say what particular relatives shall be given notice, it has power to say that notice by posting shall be given those relatives. It will be borne in mind that in this case the father had the custody of the child, and asked to be appointed guardian of her estate. Necessarily a notice to him was not required."

In Re Lundberg (Cal.) 77 Pac. 156, it was said that in Asher v. Yorba, supra, that court held: "It is a matter of discretion upon the part of the court to give any notice whatever to the relatives residing in the county," and this based upon the phrase. "as the court may deem proper." But that court said, even in view of the discretionary clause, omitted in our Code:

"The statute does in terms require that notice shall be given to the person having the care of the minor, and such notice for such time as the court may determine to be reasonable, is necessary to give the court jurisdiction to make the appointment." (Citing Eikerenkotter's Est., 126 Cal. 54, 58 Pac. 370.)

In Re Morehouse, 176 Cal. 634, 169 Pac. 365, the California court held:

'The only jurisdictional notice required is one to be given to the person having custody of the minor." (Citing the Lundberg Case, and In re Eikerenkotter, supra.)

In the history under section 1431, C. O. S. 1921 (Rev. L. 1910, sec. 6522), it is shown that the statute was adopted in 1890. The majority opinion relies upon Asher v. Yorba, supra, which was decided by the Supreme Court of California in 1899, which was nine years after its adoption, therefore, we should conclude that the section was not adopted in view of the construction placed upon it, for the simple reason that no construction was placed upon it until nine years subsequent to adoption as aforesaid.

So now I say, even assuming that our statute came from California, which it did not, that when the language of the statute in the process of its adoption by Oklahoma was changed, its meaning was changed. The only reason to change the language was to change the meaning. And the discretionary phrase had been construed prior to our purported and adjudicated adoption. This court will presume that the legislative branch of government was cognizant of the construction placed upon the peculiar phrase they saw fit to reject. When notice is required by a statute, actual notice is contemplated.

The United States Supreme Court in Wuchter v. Pizzutti (Oct. 1927) 72 L. Ed. 446, held notice, to meet the requirements of due process of law, must be in a manner to make it probable that notice will actually reach the person to be notified.

I refuse, as did Mr. Justice Harrison, to concur in the establishment of a rule of law by this court to permit infants "like bleating lambs to be led to slaughter" and gutted of their property, with posting of notice directed to their parents, as not contemplated by statute, good sportsmanship, justice, and not read except by loafers about the courthouse. I would not concur even in the interest of making every scrap of paper in the hands of the corpulent a good title, for it is unconscionable.

Isaac Smith in this case occupied the position loco parentis to this minor, and he had the care and custody of this minor, as the trial court found. He had moral and legal obligations as to this minor. He may have been put in jail for failure to comply with the compulsory education law or to provide for necessities under the statute.

Likewise he had a reciprocal right the same as would have had the natural father had he lived. He had a right of notice at least where a stranger was appointed, as herein. For six years this child was his, and they occupied the relation of parent and child.

The order appointing guardian recites a waiver by the mother, alone; it recites posting of notice. It is settled that a recited service eliminates a presumption of any other service or notice. Rock Island Imp. Co. v. Pearsey, 133 Okla. 1, 270 Pac. 846.

The Supreme Court of Oklahoma in the case of Barker v. Barker, 25 Okla. 48, 105 Pac. 347, said:

"Merely by reason * * * of his marriage to the mother, the stepfather is not required to receive into his home her children by a former husband." If he does, "and assumes the relationship of parent, the reciprocal rights, obligations, and duties of parent and child attach."

As to a person standing in loco parentis, see: 29 Cyc. 1667-1672; section 4378, R. L. 1910; section 8036, C. O. S. 1921; Barker v. Barker, supra; Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756; Harris v. Lyons (Ariz.) 140 Pac. 825; Eickhoff v. Sedalia R. Co. (Mo.) 80 S. W. 966; Nelson v. Johansen (Neb.) 24 N. W. 730; Gorman v. State, 42 Tex. 221; Whitaker v. Warren, 60 N. H. 20; section 1441, C. O. S. 1921 (sec. 6530, R. L. 1910); Coates v. Benton, 80 Okla. 93, 194 Pac. 198.

Even under the rule in California one parent cannot obtain the appointment as guardian without notice to the other. In re Dahnke's Estate (Cal.) 222 Pac. 381; Thompson v. McGregor (Tex.) 285 S. W. 285.

For these reasons, I respectfully dissent.

Note.—See under (1) 25 R. C. L. p. 1069; 3 R. C. L. Supp. p. 1440; 4 R. C. L. Supp. p. 1619; 5 R. C. L. Supp. p. 1364; 6 R. C. L. Supp. p. 1503; 7 R. C. L. Supp. p. 863. (2) 25 R. C. L. p. 762. (3) 12 R. C. L. p. 1114; R. C. L. Perm. Supp. p. 3262. (4) 2 R. C. L. p. 224; R. C. L. Perm. Supp. p. 392. See "Appeal and Error," 4 C. J. §3081, p. 1101, n. 21. "Guardian and Ward," 28 C. J. §66, p. 1085, n. 41; §302, p. 1177, n. 77. "Statutes," 36 Cyc. p. 1154, n. 81.