## HAWKINS v. TIGER et al.

No. 21044.   Opinion Filed Oct. 25, 1932.

Rehearing Denied April 4, 1933.

T. L. Brown and Woodson E. Norvell, for plaintiff in error.

G. R. Horner and E. J. Gilder, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Tulsa county setting aside a guardian's deed to certain land situated in that county.

The action was commenced by Susie Tiger, a minor, by her mother and next friend, Louisa Tiger Lee, against F. Hawkins, the plaintiff in error, and H. E. Bart, as administrator of the estate of Sarah Sallust, deceased, the defendants in error. While the action was pending, the plaintiff became of age and the action continued in her name. The issues between the two defendants were not determined by the court and are not presented on this appeal. The question of the amount, if any, of improvements made upon the property by the defendant F. Hawkins was not considered by the court and is not presented on this appeal. The judgment was in favor of the plaintiff and against both of the defendants. From that judgment the defendant F. Hawkins appealed to this court.

The record shows that John Tiger, a full-blood Creek Indian, died intestate, the owner of the land involved herein, leaving surviving him as his sole and only heirs at law, his child, the plaintiff, and his wife, Louisa Tiger, now Louisa Tiger-Lee. The plaintiff inherited and became the owner of

an undivided one-half interest in the land. Soon after the death of John Tiger and while the plaintiff was under the age of 14 years, one R. D. Howe filed in the county court an application for the appointment of himself as guardian of the estate of the plaintiff. Purporting to act as such guardian, he sold the interest of the plaintiff in the land, under an order of the county court, and executed a guardian's deed thereto. Whatever title passed thereby was conveyed by mesne conveyances to Sarah Sallust, who died and whose interest therein was conveyed by her administrator to the defendant F. Hawkins.

The guardian's deed is attacked on two theories, the first of which is that the county court did not acquire jurisdiction to appoint a guardian for the reason that the minor resided with her mother in the county, and that no personal notice of the application for the appointment of a guardian was given to her mother.

The record shows that R. D. Howe was a stranger to the Tiger family; that the mother of the minor had the care and custody of the minor; that the minor resided in the county, and that no personal notice of the application for the appointment of the guardian was given to the mother of the minor. The trial court so found and that finding is not against the clear weight of the evidence.

We are thus confronted with the legal question of whether or not the appointment of the guardian was void, as held by the trial court. The trial court was justified in so holding on the 12th day of July, 1929, for at that time the law on the subject was that announced by this court in Myers v. Harness, 116 Okla. 268, 244 P. 1109, as follows:

"Under the provisions of section 1431, Comp. Stat. 1921, and the allegations of the petition in the instant case, it was essential that the mother of the minor child should have notice of the application of a stranger to be appointed guardian of such minor child before the court could acquire jurisdiction."

It will be noted that by that decision former decisions of this court in Ross v. Groom. 90 Okla. 270, 217 P. 480. Johnson v. Furchtbar, 96 Okla. 114, 220 P. 612, and Crabtree v. Bath, 102 Okla. 1, 225 P. 924. in so far as they were in conflict with the views therein expressed, were expressly overruled. In the case of Harness v. Myers. 143 Okla. 147, 288 P. 285, this court neither expressly approved nor disapproved the rule stated in Myers v. Harness, supra. We now deem it advisable to determine what effect shall hereafter be given the decision of this court in Myers v. Harness, supra.

Section 13, art. 7, of the Constitution of Oklahoma vests authority in the county court to appoint guardians of minors and to transact all business appertaining to the estates of minors, including the sale thereof. By the provisions of section 2 of the Schedule of the Constitution, all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which were not repugnant to the Constitution and which were not locally inapplicable, were extended to the state of Oklahoma and remained in force until they expired by their own limitation or were altered or repealed by law. Under that provision, section 1814, Statutes of 1903, was extended in force. That provision was neither repugnant to the Constitution nor locally inapplicable: it has not expired by its own limitation, and it has not been altered or repealed by any legislative enactment. It was re-enacted as section 6522, R. L. 1910, with the adoption of that revision of the statute. That provision is not and cannot be a limitation upon the power of county courts to appoint guardians for minors. It is a provision prescribing a part of the procedure to be followed by courts in the appointment of guardians of minors. The notice therein required to be given to the relatives of the minor residing in the county and to any person having the care of such minor for whom it is sought to have a guardian appointed, is such notice as the county court "deems reasonable to be given." There is nothing in the provision requiring personal notice to be given. It was so held by this court in the cases overruled in Myers v. Harness, supra. It is stated in that case that the statute "clearly contemplates that the relatives in the county and persons having the care and custody of the ward should have some kind of actual information of the hearing of the petition for the appointment of the guardian." In the absence of a provision requiring notice, no notice would be required and the county court could proceed to make the appointment under its constitutional authority. Such was the ancient practice in the appointment of guardians for minors. The legislative enactment, by its terms, clearly indicates a legislative intent to vest the county judge with the discretion to determine what notice of the application for the appointment of the guardian should be given to the relatives of the minor residing in the county and to the person having the care of the minor.

The decision of this court in Myers v. Harness, supra, and the decision of this

court in Smith v. Page, 117 Okla. 223, 246 P. 217, on the legal question herein considered, are specifically overruled, and the decisions of this court in Ross v. Groom, supra, Johnson v. Furchtbar, supra, and Crabtree v. Bath, supra, are reannounced as a proper construction of the statute in question.

There is nothing in this record to show that the fraud, if any, in procuring the appointment of the guardian or a sale of the real estate was such as to defeat the rights of F. Hawkins, an innocent purchaser of the real estate. If there was any fraud therein, there is nothing in the record to show that the defendant F. Hawkins was in any way responsible therefor or chargeable therewith.

It is contended herein that the sale of the real estate was void for the reason that the mother of the minor was residing in the county when the petition for the sale of the land was filed; that she continued to reside therein until after the date of the order of the sale, and that no copy of the order setting the application to sell for hearing was served on her. The affidavit of service is in conformity with the provisions of section 10, chapter 65, S. L. 1910, which was the law applicable at that time. Under the provisions of that section, a copy cou'd be served personally or mailed to all persons interested in the estate. Personal service was not required. That section subsequently has been amended. We think that the judgment roll shows a substantial compliance with the requirements of the statute and the irregularities, if any, were cured by the order of confirmation. Luker v. Masterson, 109 Okla. 75, 234 P. 727.

Although the judgment of the trial court was in conformity with the decision of this court in Myers v. Harness, supra, it is reversed and the cause is remanded to that court, with directions to enter a judgment in conformity herewith.

HEFNER, CULLISON, KORNEGAY, JJ., and WOODARD, Special J., concur. LESTER, C. J., CLARK, V. C. J., and RILEY and SWINDALL, JJ., dissent. McNEILL, J., disqualified.

RILEY, J., dissenting. I cannot concur in the majority opinion. My views as to what notice of application for appointment of a guardian is necessary as indicated by the provision of section 1431, C. O. S. 1921 [O. S. 1931. Sec. 1419] were expressed in my dissenting opinion in Harness v. Myers, 143 Okla. 147, 288 P. 285. Therein is pointed out the error of the majority opinion holding that our statute on probate matters, including appointment of guardians, was adopted from California. I also pointed out that the case of Asher v. Yorba, 125 Cal. 513, 58 P. 137, upon which the so-called rule of law adopted in this state seems to have been based, has no application whatever where a stranger to the family makes application for the appointment as guardian of a minor, resident of the county, and in the care and custody of its parents, for there the parent and not a stranger was appointed.

It is not my purpose here to again cite the authorities supporting my views.

The case of Harness v. Myers, supra, largely relied upon in the majority opinion herein as re-adopting the so-called California rule, is distinguishable from the instant case. In fact, the majority opinion is in conflict with the principles of law and justice stated therein. It was there pointed out that if the minor has a father and mother living in the county, actual notice to them is required, for in the body of the opinion it is said:

"If the minor had a father and mother living and they had the custody of the child, and a stranger was asking to be appointed as guardian, of course, a judge, who performs his official duty, would require some sort of actual notice on the parents."

I heartily agree with that statement, and had hopes that when the occasion arose this court would recognize the principles there announced and adopted as the law of this state. But not so. It is now by the majority opinion made the rule in this state that an absolute stranger can make application to the county court and be appointed the guardian of a minor who resides with its parents in the county where the application is made and be appointed guardian of its property without any actual notice to the parent.

Again, the case of Harness v. Myers, supra, is distinguishable, for therein it was specifically stated that the mother of the minor signed a waiver of her rights to be appointed as guardian of her daughter. Not so in the instant case. The majority opinion states clearly that the mother of the minor resided in the county and had the care and custody of the minor, and that the minor resided in the county, and that no personal notice of the application for the appointment of the guardian was given to the mother of the minor, an entirely different state of facts from those in Harness v. Myers, supra. The father was dead and the mother was the only custodian to whom notice could be given.

Mr. Justice Harrison, in Jones v. Snyder, Gdn., 121 Okla. 255, 249 P. 313, in discuss-

ing the effect of fraudulent concealment of jurisdictional facts, pointed out that under section 1431, C. O. S. 1921 [O. S. 1931, sec. 1419] "The fact of notice to the father and fact of domicile of the child are both jurisdictional facts." Therefore, while jurisdiction to make the appointment is lodged in the county court by the Constitution, jurisdiction over the person depends upon residence in the county and notice.

Relative to the rights of an alleged innocent purchaser of property of an infant, sold by its guardian, Justice Harrison therein said:

"The writer is unable to see wherein the obligation of the state could be paramount to that of protecting minor children against being defrauded of their property." He further points out that the minor must of necessity be "equally innocent, but is utterly helpless to protect itself. It has no option, no voice whatever in the transaction; it is not permitted by law even to raise its voice in its own behalf against the fraud, but like a helpless lamb is led to the slaughter and the law will not hear its cry."

What has been done in a particular case, or in the case under consideration, is not of so much importance as what may be done, and all too often has been done, under the rule reverted to in the majority opinion. It may be conceded that the honest judge will follow the method suggested by Justice Hefner in Harness v. Myers, supra, and require actual notice on the parent where both reside in the county and the minor is in the custody of the parent or parents, but, unfortunately, if we may judge by the constant criticism of the proceedings in guardianship matters, and by the act of the Legislature in enacting chapter 84, S. L. 1923-1924, shortly before the adoption of the opinion in Myers v. Harness in May, 1925, and while said cause was pending in the court, some county judges are not honest. Under the rule announced in the majority opinion, the county judge is the sole judge of what sort of notice is to be given and how long before the appointment is made that the notice is to be given. A county judge who, for reasons of his own, might desire to assist a designing and unscrupulous person to deprive a minor of its property, could, under the broad power given him in the majority opinion, decide that all the notice necessary would be to call his bailiff and have him go to the courthouse door and cry vive voce to the world that a guardian was about to be appointed for a certain minor, and that all persons interested must come into court forthwith and object or forever after hold their peace,

and the county judge, being the sole judge of the reasonableness of said notice, could proceed at once to appoint a total stranger as guardian of the minor resident of the county and in the custody of its parents without any actual notice whatever to such parents, and thereafter proceed to sell the minor's land. Such, in substance, would be the effect where notices are posted as in the instant case in many cases where the parents are Indians and unable to read or speak the English language and in many cases of illiterate whites who are unable to read and write.

The natural interest of the parent in the welfare of his child demands that, where the minor's property is about to be sold, the parent in whose custody it is and who is responsible for its support and maintenance should have some sort of actual notice before a total stranger is appointed as guardian of such minor child with power to sell and dispose of its property. Such I think the law requires. It was so held in Myers v. Harness, supra, which is specifically overruled by the majority opinion, and it was not, as stated in the majority opinion, approved or overruled in Harness v. Myers, supra. I think it should be adhered to. It would have a tendency to stop some of the pernicious practices of the past. There is no occasion for returning to a rule based on the wrongful construction of one decision in the state of California under which many Indian minors of this state have been stripped of their inheritance.

LESTER, C. J., CLARK, V. C. J., and SWINDALL, J., concur.

Note.—See under (1) 12 R. C. L. 1114.